LOYAL PROTECTIVE LIFE INSURANCE COMPANY & another *vs.* MASSACHUSETTS INDEMNITY AND LIFE INSURANCE COMPANY & others.[1]

Suffolk.   January 4, 1972. — September 18, 1972.

Present: TAURO, C.J., QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Insurance*, Control of insurer, Acquisition of voting stock of insurer. *Joint Enterprise. Corporation*, Subsidiary corporation. *Statute*, Construction. *Equity Pleading and Practice*, Costs, Appeal. *Words*, "Person," "Domestic insurer," "Any combination," "Acquiring party."

The requirement under G. L. c. 175, § 193M, of filing a statement with the Commissioner of Insurance, which applies to a person other than a domestic insurer making a tender offer for, or acquiring a controlling interest in the stock of a domestic insurer, applies also to a domestic insurer acting in concert with a foreign insurer to make such an offer. [488–493]

The phrase "acting in concert" in G. L. c. 175, § 193L, includes the combination of a subsidiary and its controlling parent corporation. [491]

G. L. c. 175, § 193M, requires a person, other than a domestic insurer, making a tender offer for a controlling interest in the stock of a domestic insurer to file a statement with the Commissioner of Insurance whether or not the person succeeds through the tender offer in controlling the domestic insurer. [493–494]

A domestic insurance company, successful in its appeal to this court from a decree denying an injunction against acquisition of its stock, was not entitled to recover counsel fees for the appeal. [494–495]

BILL IN EQUITY filed in the Superior Court on October 19, 1970.

The suit was heard by *Moynihan, J.*

*Robert J. Condlin*, Assistant Attorney General (*Walter H. Mayo, III*, Assistant Attorney General, with him) for the Attorney General.

---

[1] A companion case, Massachusetts Indemnity and Life Insurance Company *vs.* Loyal Protective Life Insurance Company (No. 7605), was also entered in this court on the defendants' appeal from the final decree against them.   The corporate defendant conceded in its brief that the appeal is now moot, and the individual defendant filed no brief.   Their joint appeal in the companion case is therefore treated as waived.

362 Mass. 484                                        485

Loyal Protective Life Ins. Co. *v.* Massachusetts Indem. & Life Ins. Co.

*Edward B. Hanify* (*John M. Harrington, Jr., Roger Allan Moore, Robert F. Hayes, & John S. Hopkins, III,* with him) for Loyal Protective Life Insurance Company & another.

*Charles C. Cabot* (*Philip G. Koenig* with him) for Massachusetts Indemnity and Life Insurance Company.

*John M. Hall* (*Robert S. Frank, Jr.,* with him) for Pennsylvania Life Company.

*Richard L. Medverd* (*Myer L. Orlov* with him) for the interveners, Thomas J. McHugh & others.

QUIRICO, J. By this bill in equity "for injunction and related relief" pursuant to G. L. c. 175, § 193M, inserted by St. 1970, c. 484, § 4 (hereinafter § 193M), Loyal Protective Life Insurance Company (Loyal) sought in part to enjoin the acquisition of its stock pursuant to a tender offer, extended over the signature of the defendant Massachusetts Indemnity and Life Insurance Company (Mass. Indemnity) with the participation of the defendants Pennsylvania Life Company (Penn. Life), The First National Bank of Boston (Bank) and Smith, Barney and Co. Incorporated (Smith, Barney), a broker-dealer in securities. The Attorney General, acting at the request of the Commissioner of Insurance (Commissioner), was permitted to intervene as a party plaintiff under § 193M (g). In addition, forty-seven stockholders of Loyal were permitted to intervene over objection by Loyal.

Loyal and the Attorney General appeal from a final decree of the Superior Court to the effect that the tender offer in question did not violate the provisions of § 193M. Their appeals are before us on a full transcript of the evidence and a report of material facts. Consequently, "it is our duty to examine the evidence . . . and decide . . . [the] issues according to our judgment as to the facts and the law, giving due weight to the findings of the judge which will not be reversed unless plainly wrong." *Bianchi* v. *Retirement Bd. of Somerville,* 359 Mass. 642, 644, and cases cited.

The subsidiary facts, as found by the trial judge, are not in dispute and we summarize them. Loyal and Mass. Indemnity are stock insurance corporations organized and existing under the laws of this Commonwealth. Both are principally engaged in the sale of non-cancellable health insurance. Penn. Life, a Delaware corporation with its usual place of business and its executive offices in Santa Monica, California, is a holding company owning a controlling interest in several subsidiary companies, some of which are insurance companies writing disability, income protection, health and life insurance. In January, 1969, Penn. Life, acting through one of its wholly owned subsidiaries, Mayflower, Inc. (Mayflower), acquired 99.8% of the stock of Mass. Indemnity and this stock is still held by Mayflower.

In 1969 and 1970, officers of Penn. Life and Mass. Indemnity discussed the possibility of acquiring control of Loyal. On October 5, 1970, a meeting was held in New York attended by the president of Mass. Indemnity, three individuals who were directors of both Mass. Indemnity and Penn. Life, and two representatives of Smith, Barney. The Smith, Barney representatives advised the group that two blocks of voting stock of Loyal, totaling 100,000 shares, were available for purchase. There was discussion of the subject of acquiring these shares, and also of the acquisition of all of the outstanding shares of Loyal. It was tentatively decided to acquire the two blocks aggregating 100,000 shares and to finance the purchase by having Penn. Life borrow the requisite funds and relend them to Mass. Indemnity at the same rate of interest Penn. Life had to pay. It was also tentatively decided to make a tender offer for the remainder of Loyal's outstanding shares at the price of $42 a share; to have Smith, Barney act as dealer-manager of the tender offer; and to select the Bank as tender agent.

On October 9, 1970, Mass. Indemnity acquired in its name the 100,000 shares of Loyal. This purchase was financed by means of a loan from Penn. Life to Mass.

362 Mass. 484                                   487

Loyal Protective Life Ins. Co. *v.* Massachusetts Indem. & Life Ins. Co.

Indemnity in the amount of $4,400,000. On the same date the executive committee of Penn. Life approved the plan to have Mass. Indemnity make a public tender offer for Loyal's remaining shares and to have Penn. Life borrow the necessary funds from the Bank of America. Moreover, on the same date of October 9, 1970, the board of directors of Mass. Indemnity voted to authorize its executive committee and officers to take such action as might be necessary or desirable to acquire any amount up to all of Loyal's stock and to borrow the funds necessary for the acquisition.

On October 12, 1970, the board of directors of Penn. Life by a written consent to action without a directors' meeting: (1) approved the "proposed" action of Mass. Indemnity to purchase shares of Loyal from individual holders of certain blocks and to extend a tender offer for all remaining shares; (2) authorized Penn. Life to borrow up to $22,000,000 from Bank of America; (3) empowered the officers of Penn. Life to effect such pledges of stock, including the stock of Loyal, as might be required by said bank; (4) authorized the officers of Penn. Life to lend Mass. Indemnity up to $22,000,000 so that Mass. Indemnity would have funds to acquire the shares of Loyal; and (5) authorized the officers of Penn. Life to set the terms of the loan to Mass. Indemnity, including: (a) an interest rate not to exceed that payable by Penn. Life, (b) a term not to exceed the term of the loan to Penn. Life and, (c) in the officers' discretion, security consisting of the shares of Loyal acquired by Mass. Indemnity together with a right reserved to Penn. Life to repledge such shares as security for the loan to it from Bank of America. On the same date, October 12, 1970, Penn. Life had arranged a commitment with the Bank of America for loans aggregating $22,000,000 for the purpose of acquiring shares of Loyal.

On October 14, 15 and 16, 1970, an advertisement announcing the tender offer was published in several newspapers. The offer was in the name of Mass. Indemnity, was addressed to the stockholders of Loyal and stated

that Mass. Indemnity "hereby offers to purchase all of the capital stock ($10 par value) of Loyal Protective Life Insurance Company" at a price of $42 a share subject to the terms and conditions set forth in the offer. On October 19, 1970, Loyal entered this bill to enjoin the acquisition of its shares pursuant to the tender offer.

1. The primary issue raised by these appeals is whether the defendants or any of them, prior to acquiring the first group of 100,000 shares of Loyal, and prior to extending the public tender offer to purchase all remaining shares of Loyal, were required to file with the Commissioner and with Loyal a statement under § 193M (a), which provides in pertinent part that: "No person other than . . . a domestic insurer shall make a tender offer for . . . or acquire . . . any voting stock of a domestic insurer . . . if, after the consummation thereof, such person would directly or indirectly be in control of such insurer . . . *unless*, at the time any such offer . . . is made . . . *such person has filed with the commissioner and has sent to such insurer a statement containing the information required by this section and such offer . . . has been approved by the commissioner . . .*" (emphasis added).

It is undisputed that none of the defendants filed such a statement. The trial judge ruled that the "domestic insurer" exception embodied in the language "[n]o person other than . . . a domestic insurer," appearing in the first sentence of § 193M (a), operated to exempt from the filing requirements of that section both the initial acquisition of Loyal's stock and the subsequent tender offer to acquire all remaining stock. This ruling was based upon the judge's ultimate conclusion that: "The tender offer was made in the name of Mass. Indemnity alone. Only Mass. Indemnity is the person acquiring the tendered shares of Loyal."

However, the judge also specifically found that the initial moves for the acquisition of Loyal stock by Mass. Indemnity came from officials of Penn. Life, and not

362 Mass. 484                                    489

Loyal Protective Life Ins. Co. *v.* Massachusetts Indem. & Life Ins. Co.

from Mass. Indemnity. Further, he also found "that Penn. Life was an active participant with Mass. Indemnity in the formulation of a plan to have Mass. Indemnity acquire all of the outstanding shares of Loyal and in the execution of that plan. Penn. Life did not merely approve arrangements made by Mass. Indemnity to acquire the shares. It collaborated with Mass. Indemnity at every stage of the undertaking. It was the dominant party in carrying out the project that in actuality was jointly undertaken by both companies."

The "domestic insurer" exception appearing in § 193M (a) expressly provides that "[n]o *person* other than . . . a domestic insurer" (emphasis added) shall attempt to acquire control of another domestic insurer without complying with the filing and approval requirements of § 193M. General Laws c. 175, § 193L (hereinafter § 193L), inserted by St. 1970, c. 484, § 4, provides in part that: "As used in sections . . . [193M and 193N] the following words shall, unless the context requires otherwise have the following meanings: . . . 'Person,' an individual, a corporation, a partnership, an association, a joint stock company, a trust, an unincorporated organization, any similar entity *or any combination of the foregoing acting in concert,* but does not include a securities broker performing no more than the usual and customary broker's function" (emphasis added).

We hold, contrary to the conclusion of the trial judge, that the relationship between Penn. Life and Mass. Indemnity in connection with their joint venture to acquire control of Loyal constituted those companies a "combination . . . acting in concert," and thus a single "person" seeking to acquire control of Loyal, as that term is defined in § 193L.

The exception appearing in § 193M (a) speaks only of "a domestic insurer," and makes no mention of combinations including foreign insurers. Construing the term "domestic insurer" in accordance with "the common and approved usage of the language" (G. L. c. 4, § 6, Third),

and viewing it in light of the definitions ascribed to it and similar terms in other parts of c. 175,[2] the term "domestic insurer," as used in § 193M, means a stock insurance company incorporated under the laws of this Commonwealth. So defined, the term does not encompass a combination of such a company with a foreign insurance company. We therefore hold that the Penn. Life-Mass. Indemnity tender offer was subject to the filing requirements of § 193M.

2. We reject the argument, made by both Penn. Life and Mass. Indemnity, that existing statutory and regulatory provisions (apart from § 193M), subjecting Mass. Indemnity to general supervision by the Commissioner, are adequate in these circumstances to protect domestic insurers, their policyholders and their shareholders, without the need for filing the information required by 193M. Penn. Life, found by the trial judge to have been "the dominant party" in initiating the tender offer, is a foreign corporation and thus is not subject to the same close supervision by the Commissioner as a domestic insurer. Moreover, Penn. Life's own acquisition of control of Mass. Indemnity, in January of 1969, was not then subject to the Commissioner's review because § 193M was not enacted until 1970. See St. 1970, c. 484, § 4. A different construction from that adopted above would permit a foreign insurance company which once acquires control of a domestic insurer to employ that domestic insurer as a mere "front" for acquiring control of additional domestic insurers, without complying with the filing and approval requirements of § 193M. Such a construction would defeat the avowed legislative purpose of § 193M, which was "to protect domestic stock insurance

---

[2] Although the term "domestic insurer" is not specifically defined for purposes of § 193M, the term is defined, for other purposes, in c. 175, § 161A, (see St. 1968, c. 129; c. 696, §§ 2, 6), as meaning "a stock insurance company incorporated under the laws of the commonwealth." Similarly, the term "domestic company" is defined in G. L. c. 175, § 1, as meaning "a company incorporated or formed in the commonwealth." Significantly, none of these definitions mentions combinations of domestic insurance companies with foreign companies.

362 Mass. 484 491

Loyal Protective Life Ins. Co. *v.* Massachusetts Indem. & Life Ins. Co.

companies from being taken over by undesirable or unsuitable persons and to prevent a lessening of competition in the industry." 1970 House Doc. No. 158, p. 3. Since the combination which intended to acquire control of Loyal filed no statement under § 193M, there has been no opportunity or occasion for the Commissioner to consider whether the proposed acquiring combination qualified therefor under the statute.

3. We also reject the contention by Penn. Life and Mass. Indemnity that the language "acting in concert" appearing in the § 193L definition of "person" does not apply to a "vertical" combination of a subsidiary corporation and its controlling parent corporation, but only to a "horizontal" combination resulting from a pooling of stock interests where no single purchaser's interest would suffice to trigger the statute. This contention is based on the construction which Federal courts have given to substantially similar words in the Federal tender offer statute. Securities Exchange Act of 1934, 15 U. S. C. § 78n (d) (2) (1970). *Bath Indus. Inc.* v. *Blot*, 305 F. Supp. 526, 537–538 (E. D. Wis.), affd. 427 F. 2d 97 (7th Cir.). Of course, the Federal decisions are not controlling, and because of differences in the language of the Federal statute and that of this Commonwealth the Federal decisions are not persuasive. While both statutes define the word "person" to include certain specified legal entities, § 193L applicable here includes the additional provision that the word includes "any combination" of the listed entities. We hold that "any combination" of such entities includes a "vertical" combination such as that of Penn. Life and its subsidiary Mass. Indemnity.

4. Penn. Life argues that to construe the word "person" as we have construed it would be inconsistent with various other provisions of § 193M, and particularly the provisions of § 193M (b) (1) that the statement required to be filed pursuant to § 193M contain "[t]he name and address of each person by whom or on whose behalf the acquisition of control referred to in subsection (a) is to be effected, hereinafter called 'acquiring party' . . . ."

It is argued that this provision indicates "that a 'person' is recognized as being distinct from an 'acquiring party.'" In our view, that provision merely recognizes that, as in this case, the "person" technically making the offer or purchase, and the "person . . . on whose behalf the acquisition of control . . . is to be effected," may be separate entities. Thus, it is provided that the statement filed with the Commissioner must disclose the names and addresses of those entities comprising the "person" actually acquiring control of the domestic insurer.

Penn. Life also contends that such a construction of the term "person" would be inconsistent with § 193M (b), which provides in part that: "If the person required to file the statement referred to in subsection (a) is a partnership, limited partnership, syndicate or other group, the commissioner may require that the information called for by clauses (1) through (12) of this subsection shall be given with respect to each partner of such partnership or limited partnership, each member of such syndicate or group *and each person who controls such partner or member*" (emphasis added). It is argued that this provision demonstrates that the Legislature did not consider controlling entities to be part of the "person" making the tender offer. We do not agree. The provision that in certain circumstances the Commissioner may require information concerning the entity controlling the "acquiring party" does not mean that the controlling entity can never be or become a participant in a combination constituting the "acquiring party." If, as found in this case, the controlling entity (Penn. Life) is such a participant, it must, by virtue of being a part of the "acquiring party," file the statement required by § 193M. It is not excused from doing so because the combination also included a domestic insurer (Mass. Indemnity).

Both Penn. Life and Mass. Indemnity contend that the foregoing construction of the term "person" would be inconsistent with the further provision of § 193M (b) that if the person required to file is a corporation, the Commissioner may require additional filings by any other

362 Mass. 484                                   493

Loyal Protective Life Ins. Co. *v.* Massachusetts Indem. & Life Ins. Co.

persons controlling more than ten per cent of the corporation. They argue that this provision clearly indicates that the acquiring party may be a "controlled" corporation. This may be so, but here the "person" actually making the offer was not a single corporation, but rather was a combination of two corporations, and therefore the foregoing provision relating to acquisitions or tender offers extended by single corporations is inapplicable.

5. Penn. Life and Mass. Indemnity argue that requiring a § 193M filing in situations like the present will "destroy the domestic insurer exemption." On the contrary, our decision merely limits the exemption to "domestic insurers" as expressly provided in the statute. As pointed out above, a contrary ruling would render § 193M ineffective in many instances. "The legislature cannot be presumed to destroy at birth its own enactment." Sutherland, Statutes and Statutory Construction (3d ed.) § 4932, p. 470. This court long ago observed: "It is a cardinal rule of interpretation that '. . . where a provision, general in its language and objects, is followed by a proviso . . . the proviso is to be strictly construed, as taking no case out of the provision that does not fairly fall within the terms of the proviso, the latter being understood as carving out of the provision only specified exception, within the words as well as within the reason of the former.' Endlich, Interpretation of Statutes, 742." *Opinion of the Justices,* 254 Mass. 617, 620. See Sutherland, *supra,* §§ 4933, 4936.

6. Mass. Indemnity and those stockholders of Loyal permitted to intervene in support of the tender offer suggest that this case may be moot because the tender offer did not succeed in transferring control of more than fifty per cent of Loyal's stock to the Penn. Life-Mass. Indemnity combination. They argue that § 193M, by its terms, applies only "if, after the consummation . . . [of the tender offer] such person would . . . be in control of such insurer," and that the failure of the tender offer demonstrates that it was not such as would, "after the

consummation thereof," result in a change of control.[3] There is no merit to this argument.

Section 193M plainly contemplates pre-acquisition filing and approval by the Commissioner when the *intended* result of the tender offer is control of the domestic insurer in question.[4] The statute requires the prescribed statement to be filed with the Commissioner before making any purchase or tender offer which, if consummated, would give the acquiring party control of the domestic insurer. The tender offer extended over the signature of Mass. Indemnity was for "all of the Capital Stock . . . of Loyal," and was therefore subject to the requirements of § 193M.

7. Loyal argues in its brief that this court should, in the exercise of its equitable powers, order Penn. Life to pay Loyal's attorneys' fees in connection with this litigation. If this request is properly before us, it is in any event limited to attorneys' fees incurred in connection with the appeal to this court, and not in prior proceedings. Penn. Life argues that this is not a proper item of recovery, and the intervening stockholders of Loyal claim that Loyal should be ordered to pay their counsel fees. It is well established that "[c]ourts of equity, in certain cases under . . . [their] general powers, allow counsel fees. *Frost* v. *Belmont*, 6 Allen, 152. *Brown* v. *Corey*, 134 Mass. 249, 251." *Sears* v. *Nahant*, 215 Mass. 234, 240. A comprehensive discussion of the cases in which this power may be exercised appears in *Commissioner of Ins.* v. *Massachusetts Acc. Co.* 318 Mass. 238, 241–244, and need not be repeated here.[5] However, this

---

[3] The total number of Loyal's shares of stock outstanding was 500,000. As a result of the prior purchase of 100,000 shares and the tender offer, the combination of Penn. Life and Mass. Indemnity acquired about forty-two per cent of the issued and outstanding stock of Loyal.

[4] General Laws c. 175, § 193L, creates a rebuttable presumption of control "if any person, directly or indirectly, owns, controls, holds, with the present power to vote, or holds proxies representing, more than ten per cent of the voting stock of any other person." Whether that presumption was overcome in this case is not an issue in this appeal.

[5] For discussion of the similar principles governing recovery of

362 Mass. 484                                                495

Loyal Protective Life Ins. Co. *v.* Massachusetts Indem. & Life Ins. Co.

court has cautioned that "[t]he power of a court of equity or probate to require payments out of the property of litigants to or for the benefit of counsel who may not have been employed by those whose estates are thus diminished and who may have opposed the latter's interests is a power of great delicacy to be exercised with extreme caution." *Lewis* v. *National Shawmut Bank*, 303 Mass. 187, 191.

The instant case does not fall within any of the previously recognized categories of cases in which recovery of counsel fees has been allowed. In addition, we are mindful of the fact that this is a case of first impression, in which two courts have now reached differing conclusions. The combination of these circumstances convinces us that this is not a proper case in which to exercise our delicate power to award counsel fees.

8. The additional points raised by the parties, which have not been discussed above, have nonetheless been considered and it is our decision that they contain nothing which would alter the result we have reached. In deciding the issues in this case we have disregarded those passages in the brief of the Attorney General which make reference to material not in the record. We have repeatedly observed that briefs cannot serve the purpose of placing before this court facts which do not appear in the record or transcript before us. *Gorey* v. *Guarente*, 303 Mass. 569, 570–571. *Coonce* v. *Coonce*, 356 Mass. 690, 693. *Crall* v. *Leominster*, *ante*, 95, 105.

9. In summary, we conclude (a) that Penn. Life and Mass. Indemnity constituted a combination of entities acting in concert to acquire 100,000 shares of voting stock of Loyal, a domestic insurer, by the direct purchase thereof, and to acquire the remaining 400,000 shares of voting stock of Loyal by a tender offer therefor; (b) that after the consummation of the acquisition of such shares the combination would directly or indirectly be in control

counsel fees in the Federal courts see *Sprague* v. *Ticonic Natl. Bank*, 307 U. S. 161, 164–168; *Fleischmann Distilling Corp.* v. *Maier Brewing Co.* 386 U. S. 714, 717–721; *Mills* v. *Electric Auto-Lite Co.* 396 U. S. 375, 391–397.

496            362 Mass. 484

Loyal Protective Life Ins. Co. *v.* Massachusetts Indem. & Life Ins. Co.

of Loyal; (c) that before acquiring such shares or making any tender offer therefor, the combination was required to file with the Commissioner and to send to Loyal a statement containing the information prescribed in § 193M (b) ; (d) that the combination purchased 100,000 of such shares and made a tender offer for the remaining 400,000 shares and thereafter acquired additional shares pursuant to the tender offer, but did not file with the Commissioner or send to Loyal the statement required by § 193M; (e) that the combination violated § 193M by purchasing such shares and making such tender offer for additional shares without first filing and sending the statement required by said section; and (f) that since Smith, Barney was simply "a securities broker performing no more than the usual and customary broker's function" (G. L. c. 175, §§ 193L and 193M), and since the Bank was not a party to any combination of entities which would be in control of Loyal after the proposed acquisition of the latter's voting stock, they were not required to file or send any statement under § 193M.

10. General Laws c. 175, § 193M (h), provides that "[i]n any case where a person has acquired or is proposing to acquire any voting stock in violation of this section . . . the superior court . . . may, on such notice as the court deems appropriate, upon the application of the insurer or of the attorney general at the request of the commissioner seize or sequester any voting stock of the insurer owned directly or indirectly by such person, and issue such orders with respect thereto as may be appropriate to effectuate the provisions of this section." Because of his conclusion that none of the defendants violated § 193M, the judge did not reach the question of what orders might be appropriate to effectuate the provisions of the statute.

11. The final decree is reversed and the case is remanded to the Superior Court for further proceedings consistent with this opinion and for the issuance of such

orders as it may deem appropriate to effectuate the provisions of § 193M.

*So ordered.*