FELIPE S. MARTIN vs. RENT CONTROL BOARD OF CAMBRIDGE.

Middlesex. March 11, 1985. — April 30, 1985.

Present: GREANEY, C.J., CUTTER, & KAPLAN, JJ.

*Rent Control. Cambridge. Statute,* Construction.

A provision of St. 1976, c. 36, the rent control act for the city of Cambridge, exempting from rent control a "unit or units in an owner-occupied two-family or three-family house," contemplated an owner-occupied house in which there are either two or three actual dwelling units irrespective of how many families may be living in the property, so that an apartment building consisting of four units, two on each side of a common wall, with four separate entrances, kitchens, baths, and sleeping areas, would be a four-family building subject to rent control even though the owner's family occupied two of the four rental units. [746-750]

CIVIL ACTION commenced in the Cambridge Division of the District Court Department on October 2, 1980.

On appeal to the Superior Court Department the case was heard by *John Paul Sullivan,* J.

*Patricia A. Cantor (Seth Brian Haber* with her) for the defendant.

GREANEY, C.J. This is an appeal by the rent control board of Cambridge from a judgment of the Superior Court which determined that property owned by Felipe S. Martin at 109-111 Henry Street is an owner-occupied three-family house exempt from St. 1976, c. 36, the Cambridge Rent Control Act (Act).

The facts are not in dispute. In 1976, Martin purchased the property at 109-111 Henry Street. The property is an apartment building consisting of four units, two on each side of the building. At the time of purchase, Martin, his wife, and two children moved into unit two at 111 Henry Street which occupies the second and third floors at the 111 side. The other three units in the building were rented to tenants. In July, 1979, after the tenant in the first floor unit at 111 Henry Street

moved out, the Martin family expanded into that unit as well. The family has occupied both units since then while continuing to rent the two units at 109 Henry Street to tenants. No structural changes have been made in the two units at 111 Henry Street occupied by the Martins. Both units still have separate kitchen and bath facilities and a room or rooms which could be used as a bedroom or bedrooms.[1] Access can be gained to and from the first and second floors by means of an interior door which does not have a lock.

In November, 1979, Martin requested of the board that the status of the property be changed from a four-unit building subject to rent control to an exempt three-family house. In support of the request Martin relied upon § 3 (*b*) (6) of the Act which exempts from rent control a "unit or units in an owner-occupied two-family or three-family house." After a hearing, one of the board's hearing examiners recommended that Martin's request for exemption be denied. The examiner's recommendation was adopted by the board. Thereafter, Martin, in accordance with § 10 of the Act sought judicial review of the board's decision in a District Court. The District Court upheld the board's decision. Martin appealed the District Court decision to the Superior Court pursuant to G. L. c. 231, § 97, as amended by St. 1977, c. 655, § 2. A judge of the Superior Court concluded that Martin's property was entitled to the benefit of the exemption.

The controlling legal issue requires interpretation of the term "two-family or three-family" house as used in the Act. Section 3 of the Act broadly delineates the scope of the statute's coverage by making all "rental units"[2] subject to rent control but

---

[1] The first floor unit now consists of a front room used as a study, a guest room, a living room and a kitchen. The primary eating and kitchen areas are located on the second floor, along with a small utility room, a living room, a combination dining room and study, and one bedroom. On the third floor are two additional bedrooms.

[2] A "rental unit" is defined in § 3 (*a*) of the Act as including "any building, structure, or part thereof, or land appurtenant thereto, or any other real or personal property rented or offered for rent for living or dwelling purposes, including houses, apartments, rooming or boardinghouse units, and other

excepts therefrom "the rental unit or units in an owner-occupied two-family or three-family house." What constitutes a "two-family" or "three-family" house, however, is not defined in the Act. Nor has the term been the subject of discussion in the limited number of decisions which have examined the Act and similar rent control statutes. The board argues that the word "family" has essentially the same meaning as "unit," and that the Act exempts from rent control only owner-occupied houses in which there are two or three actual dwelling units irrespective of how many families may be living in the property. Martin, on the other hand, contends that the word "family" should be interpreted literally and that, if only two or three families live in the property, the property is a two-family or three-family house for purposes of the exemption.

We start with the statement of two general principles which apply to the problem. First, in ascertaining the meaning of statutory language, we usually look to the words themselves, defining them in keeping with their common usage and ordinary meaning, and construing them wherever possible to promote the object to be accomplished by the statute. See *Nantucket Conservation Foundation, Inc.* v. *Russell Management, Inc.,* 380 Mass. 212, 214 (1980); *Worcester Vocational Teachers Assn.* v. *Worcester*, 13 Mass. App. Ct. 1, 7-8 (1982). Second, an exception from the coverage of a statute is ordinarily to be construed narrowly so as to prevent the purposes of the statute from being rendered ineffective. See *Opinion of the Justices,* 254 Mass. 617, 620 (1926); *Loyal Protective Life Ins. Co.* v. *Massachusetts Indem. & Life Ins. Co.*, 362 Mass. 484, 493 (1972); *Department of Environmental Quality Engr.* v. *Hingham*, 15 Mass. App. Ct. 409, 411 (1983).

Applying these principles, we conclude that the board's construction is correct. The term "two-family or three-family" house, as used in the Act, denotes a certain type of structure which is designed to be lived in by two or three families. So viewed, the term refers to the physical characteristics of the

properties used for living or dwelling purposes, together with all services connected with the use or occupancy of such property."

structure, not to the relationships of the persons who may occupy it. Supporting this interpretation is the common usage and ordinary meaning of the term "two-family." A "two-family" house is defined in Webster's Third New Intl. Dictionary 2474 (1971), as "a house divided either vertically and *designed* for two families living side by side but separated by a party wall or horizontally and *designed* for two families occupying separate apartments one above the other" (emphasis supplied). The State Building Code uses a similar definition.[3]

Massachusetts case law provides some support for the general definition. In *Van Arsdale* v. *Provincetown*, 344 Mass. 146 (1962), the Supreme Judicial Court suggested that the purpose for which a structure is built, rather than the actual occupancy of the structure, is the determinative fact in deciding the structure's classification under a zoning by-law. The court there stated (at 147) that " 'two family dwellings' are separate structures or buildings *to be* occupied by two families. A building to be occupied by four families would be a four family dwelling" (emphasis supplied). Somewhat similar applications of the term can be found in *Ivarson* v. *Mulvey*, 179 Mass. 141, 142-143 (1901) (restricted in a deed), and *Maynard* v. *Tomyl*, 347 Mass. 397, 399 (1964) (zoning by-law).

The interpretation we adopt also promotes the objectives of rent control. An act such as this seeks to redress severe housing shortages in a congested municipality by "providing shelter at reasonable cost for members of the public." See *Marshal House, Inc.* v. *Rent Review & Grievance Bd. of Brookline*, 357 Mass. 709, 718 (1970). See St. 1976, c. 36; *Mayo* v.

---

[3] Under the category of "Dwellings," the State Building Code contains the following definitions:

"Multi-family apartment house: A building or portion thereof containing more than two (2) dwelling units and not classified as a one- or two-family dwelling.

"One-family dwelling: A building containing one (1) dwelling unit with not more than three (3) lodgers or boarders.

"Two-family dwelling: A building containing two (2) dwelling units with not more than three (3) lodgers or boarders per family." 780 Code Mass. Regs. § 201.3, at 52-53 (1980).

*Boston Rent Control Admn.*, 365 Mass. 575, 579-580 (1974); *Flynn* v. *Cambridge*, 383 Mass. 152, 156-158 (1981). An interpretation of the exception in § 3(*b*)(6) of the Act which looks to the building's occupancy rather than its structural design might subvert these statutory purposes. For example, the board would be placed in the highly impractical position of controlling "families" rather than units. Of necessity, it would constantly have to monitor who was living in a given building and ascertain their relationships before it could determine whether the building was subject to rent control. As a result of that supervision the board would likely become embroiled in the complex and controversial issue of what constitutes a "family." See, e.g., *Belle Terre* v. *Boraas*, 416 U.S. 1 (1974); *Moore* v. *East Cleveland*, 431 U.S. 494 (1977); *Planning & Zoning Commn. of Westport* v. *Synanon Foundation, Inc.*, 153 Conn. 305 (1966); *Feely* v. *Birenbaum*, 554 S.W.2d 432 (Mo. App. 1977); *Region 10 Client Management, Inc.* v. *Hampstead*, 120 N.H. 885 (1980). See also Annot., 71 A.L.R.3d 693 (1976). Finally, the board might be confronted with the problem of owners trying to exempt buildings from rent control by keeping units temporarily vacant only until their buildings had achieved decontrolled status. The interpretation sought by Martin might create, in substance, a fluctuating rule which would be very difficult, if not impossible, to administer. In light of what has been discussed above, we uphold the board's interpretation of the disputed term.[4]

---

[4] There is, to be sure, a public policy supporting the exception of a two-family or three-family house from the Act. See *Marshal House, Inc.* v. *Rent Control Bd. of Brookline*, 358 Mass. 686, 694-697 (1971). But the policies behind the Act itself and those behind the exception are harmonized with each other by the definition we adopt for the term two-family or three-family house. If an owner, in a situation such as Martin's, wishes to move his property outside the Act's scope he may do so but only by a mechanism provided by the Act. For example, the units may be changed structurally (such as by the physical combining of units) which might lawfully transform what was a four-unit building into a three-unit building. In order to effect such a transformation, a removal permit under the present terms of c. 23 of the Code of the City of Cambridge, Ordinance 926, might be necessary. See *Lamb* v. *Rent Control Bd. of Cambridge*, 17 Mass. App. Ct. 1038 (1984). There may be other ways of qualifying for the exemption

Turning briefly to the specific facts of this case, there is no dispute that the property at 109-111 Henry Street was designed to be occupied by four families and was in fact so occupied until July, 1979. The fact that the buildings are joined by a common wall or party wall does not make them separate buildings under the Act. It was found that "[t]he property always has been, and is essentially, a four . . . rental unit structure." There are four separate units with four separate entrances, kitchens and baths, and sleeping areas. In the circumstances, the property is, at the present time, a four-family building and is subject to rent control.

The judgment is reversed. A new judgment is to be entered adjudging that the premises at 109-111 Henry Street in Cambridge are subject to the Cambridge Rent Control Act.

*So ordered.*

as well. We express no view on whether Martin should receive any approvals necessary to make his property exempt, that determination probably belonging in the first instance to the board on facts not before us. We would assume, however, that the board would look benignly on an application by Martin which seeks in good faith to obtain additional or different space to satisfy the needs of his family.