IRENE D. POLEDNAK vs. RENT CONTROL BOARD OF
CAMBRIDGE
(and a companion case[1]).

Middlesex.   March 5, 1986. — July 9, 1986.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Municipal Corporations*, By-laws and ordinances, Rent control. *Real Pro-
perty*, Condominium. *Rent Control*, Removal of unit from market.

A regulation of the Cambridge rent control board requiring that a permit
be obtained before any residential unit is removed from the rental housing
market was in conflict with a city ordinance and thus invalid as applied
to the occupancy of a residential condominium unit by the owner who,
prior to purchasing it in 1980, had been a tenant in that unit. [857-859]
A city council, by readopting on three occasions the language of a certain
ordinance, could not be considered to have ratified a conflicting interpre-
tive regulation issued by the city's rent control board, in the absence of
any legislative history affirmatively showing that the council intended
ratification. [859-860]
Inaction by a city council did not have the effect of ratifying an interpretive
regulation of the city's rent control board which conflicted with the
terms of a certain ordinance. [860]
The views and actions of the subsequent membership of a city council were
not significant in determining the intent of the members who had adopted
a certain ordinance. [860]
A 1982 ordinance of the city of Cambridge dealing with the removal of
rental units from the residential housing market and providing that only
tenants who had occupied units before August 10, 1979, would be
eligible to own and occupy their units without a removal permit could
not, without compensation to the owner, be applied to the owner of a
condominium unit who, after her tenancy had commenced in 1980, had
purchased the unit with the primary expectation of living in it and with
the reasonable belief that a prior ordinance, then in effect, gave her the
right to buy the unit and remain in it. [861-862]

---

[1] The companion case is by Irene D. Polednak against the city of Cam-
bridge.

CIVIL ACTION commenced in the Cambridge Division of the District Court Department on August 31, 1981.

CIVIL ACTION commenced in the Superior Court Department on May 7, 1982.

On appeal of the first case to the Superior Court Department the cases were consolidated for trial before *George W. Cashman*, J., sitting under statutory authority and questions of law were reported by him to the Appeals Court. The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Anita E. Cohen* for the plaintiff.

*Patricia A. Cantor* (*Seth Brian Haber* with her) for Rent Control Board of Cambridge.

*Frank I. Smizik* & *William H. Abrashkin*, for Massachusetts Tenants Organization, amicus curiae, submitted a brief.

*Robert R. Ruddock*, for New England Legal Foundation, amicus curiae, submitted a brief.

LYNCH, J. In this case we consider questions of law reported by a judge in the Superior Court, which the parties contend raise the issue whether the plaintiff is entitled to occupy her own condominium unit without a removal permit in light of *Flynn* v. *Cambridge*, 383 Mass. 152 (1981), and the Supreme Court's subsequent pronouncements in *Loretto* v. *Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982). We took the case on our own motion and hold under the law of the Commonwealth that she is so entitled and thus we do not reach the question of what effect, if any, the decision of *Loretto* v. *Teleprompter Manhattan CATV Corp.*, *supra*, has on *Flynn* v. *Cambridge, supra*.

The questions are presented in connection with a statement of agreed facts. The plaintiff is the owner of a condominium unit at 50 Follen Street, Cambridge. Prior to purchasing the unit, she had been a tenant in that unit beginning July 1, 1980. When she began her tenancy, she knew the unit was for sale but had no intention of purchasing it. She intended to remain a tenant, however, indefinitely. Shortly thereafter, though, she changed her mind and purchased the unit on September 6, 1980.

When the plaintiff moved into the unit as a tenant and when she purchased the unit, she was subject to c. 23 of the Code of the City of Cambridge, Ordinance 926, which provided that

"[n]o owner or other person shall remove from the market any controlled rental unit, unless the Board after hearing grants a permit." Ordinance 926, § 1(c).[2] While the ordinance applied to an owner's occupation of a condominium, "if the last previous occupant was a tenant," the ordinance did not apply "if the same person will occupy" the unit as owner. *Id.* at § 1(b)(4)(i). On September 20, 1979, the rent control board of Cambridge (board) had promulgated regulation 13-01(u), which defined "last previous occupant" as used in Ordinance 926 to mean "the last occupant prior to August 10, 1979" (the effective date of that ordinance).

The plaintiff applied to the board for a permit for removal of her unit from the rental housing market and, after a hearing before an examiner, the board issued a notice of ruling on July 20, 1981, adopting the findings and recommendations of the hearing examiner and denying the application for removal. The hearing examiner found that the plaintiff was not the last previous occupant. The plaintiff brought a complaint in the Cambridge Division of the District Court. St. 1976, c. 36, § 10. On December 7, 1981, the District Court judge ruled that the unit was "exempt from the operation" of Ordinance 926; that regulation 13-01(u) was "invalid," and that the board erred in failing to grant a removal permit. The board then moved for a stay and reconsideration based on legislative history regarding Ordinance 926 which the District Court judge had not had before him. The District Court judge entered amended findings and rulings and an order for judgment for the plaintiff, entitling her to continue to reside in the unit without a removal permit. The board then took an appeal to the Superior Court.

On April 26, 1982, the Cambridge city council passed Ordinance 980 which provides that only tenants who had occupied units before August 10, 1979, are eligible to own and occupy their units without a removal permit.[3] The plaintiff filed a

---

[2] Ordinance 926, § 1 (c), also provides that the Cambridge rent control board "may issue orders and promulgate regulations to effectuate the purposes of this section . . . ." The operative provisions of Ordinance 926 are now incorporated into Ordinance 966.

[3] Ordinance 980 amended Ordinance 966 of June 29, 1981, which had incorporated the relevant portions of the prior Ordinance 926. See note 2, *supra.* We continue to refer to Ordinance 926 as such for purposes of this case.

complaint in the Superior Court challenging the constitutionality of Ordinance 980. The two cases were consolidated. The board moved for partial summary judgment, requesting the Superior Court to declare regulation 13-01(u) valid and the plaintiff subject to the removal permit requirement. On November 9, 1982, a judge of the Superior Court allowed the board's motion, citing our decision in *Flynn* v. *Cambridge, supra*, and remanded the case to the board for further proceedings.[4] On November 19, 1982, the board filed a motion for clarification, but the court refused to rule on that motion. The board reaffirmed its original notice of ruling of July 20, 1981.

A judge in the Superior Court reported the following questions of law to the Appeals Court:

1. Was the plaintiff required to apply for a removal permit in order to lawfully occupy, as owner, unit 308 at 50 Follen Street, Cambridge, a condominium unit subject to c. 36 of the Acts of 1976?

2. Are Ordinance 926 as amended and Cambridge rent control board regulations, including 13-01(u), as applied to the plaintiff in this case, constitutional?

3. Is Cambridge rent control board regulation 13-01(u) within the scope of that board's authority pursuant to c. 36 and Ordinance 926?

4. Did the Cambridge rent control board properly deny the plaintiff a removal permit under Ordinance 926 at its first hearing or later at the remand hearing under Ordinance 980?

We answer questions 1 and 4, "No." Because of the view we take of the case we do not answer questions 2 and 3.

At the time the plaintiff purchased her unit, Ordinance 926 specifically exempted from the removal permit requirement an owner who was the last previous occupant as a tenant. Were that ordinance alone in question, there would be no doubt that the plaintiff purchased with the reasonable belief that she was entitled to continue to live in her unit as an owner and that

---

[4] Although the Superior Court held that the plaintiff was not exempt from the removal requirement of Ordinance 926, the Superior Court remanded the case to the board for further consideration of the plaintiff's claim for a removal permit in light of regulations specifying consideration for the granting or denial of a removal permit for owner-occupants who were subject to Ordinances 926 (and 980).

any subsequent attempt to prevent her from residing there would be a taking.[5] Cambridge argues, however, that regulation 13-01(u) interpreted the policy behind Ordinance 926 to cut off the right to occupy of owners who had become tenants after the effective date of the ordinance. As it applies to the plaintiff, that regulation is invalid, and the plaintiff was entitled to rely on the plain meaning of Ordinance 926 that she could occupy her unit.

Regulation 13-01(u) purports to define "last previous occupant" as used in Ordinance 926. In adopting the regulation, the board was acting pursuant to the authority granted to it by Ordinance 926 to "promulgate regulations to effectuate the purposes of this section." Ordinance 926, § 1(c).[6] An agency's interpretation of a statute, under which it is vested with broad authority to effectuate the purposes thereof, is entitled to great weight. See *Borden, Inc.* v. *Commissioner of Pub. Health*, 388 Mass. 707, 723, cert. denied, sub nom. *Formaldehyde Inst., Inc.* v. *Frechette*, 464 U.S. 936, appeal dismissed for want of substantial Federal question sub nom. *C.P. Chem. Co.* v. *Commissioner of Pub. Health*, 464 U.S. 923 (1983); *Levy* v. *Board of Registration & Discipline in Medicine*, 378 Mass. 519, 524-525 (1979); *Finkelstein* v. *Board of Registration in Optometry*, 370 Mass. 476, 478-479 (1976). Even if this principle applies to the interpretation of ordinances by municipal boards, it is nevertheless "one of deference, not abdication, and courts will not hesitate to overrule agency

_____

[5] In interpreting Ordinance 926 to "require that any unit which is a controlled rental unit on August 10, 1979, remain part of the rental housing stock of the city of Cambridge," the court did not refer to the owner-occupancy exception, but was considering the situation of a nontenant buyer or owner. *Flynn* v. *Cambridge*, 383 Mass. 152, 156 (1981). "[I]f the 'last previous occupant' purchases the condominium, the ordinance then permits him to occupy his unit." *Id.* Nothing in *Flynn* suggests that the plaintiff, at the time she purchased her unit, was unable to occupy her unit.

[6] The Cambridge Rent Control Act, St. 1976, c. 36, § 5(e), empowers the board "to issue orders and promulgate regulations to effectuate the purposes of [the] act." See also § 5(c). The board was not acting pursuant to §§ 5(c) or 5(e) in promulgating regulation 13-01(u). Instead it purported to interpret Ordinance 926 in accordance with the powers delegated to it by that ordinance. Compare *Southview Co-op. Hous. Corp.* v. *Rent Control Bd. of Cambridge*, 396 Mass. 395, 396-397 (1985).

interpretations of rules when those interpretations are arbitrary, unreasonable or inconsistent with the plain terms of the rule itself." *Finkelstein* v. *Board of Registration in Optometry, supra* at 478. Here, regulation 13-01(u) is inconsistent with the plain terms of Ordinance 926 because it seeks to introduce a time limitation on an exception which the ordinance provides without limitation. Any other holding would give the board power of "infinite manipulation and expansion" and would give rise to "aggressive interpretation." *Id.*

The board advances several theories to save regulation 13-01(u), all of which are ineffectual.

First, the board argues that because the operative language of Ordinance 926 was reenacted three times prior to the plaintiff's purchase of the unit, and after the adoption of regulation 13-01(u) (Ordinances 929, 932, and 941), the city council ratified the board's interpretation of Ordinance 926. It has long been the rule in the Commonwealth that "when a statute after having been construed by the *courts* is reenacted without material change, the Legislature are presumed to have adopted the judicial construction put upon it" (emphasis added). *Nichols* v. *Vaughan*, 217 Mass. 548, 551 (1914). See *Doherty* v. *Commissioner of Ins.*, 328 Mass. 161, 164 (1951).[7] The presumption of approval is based on the principle of stare decisis. *Nichols* v. *Vaughan, supra* at 551. A different situation is presented when a municipal board claims ratification of its interpretation by the city council. In such cases it must appear from the legislative history that the city council affirmatively intended to adopt the board's construction. Such an affirmative intent will not be presumed where the plain terms of the ordinance contradict the board's interpretation. See *SEC* v. *Sloan*, 436 U.S. 103, 119-123 (1978); *United States* v. *Comm'rs of Sheffield*, 435 U.S. 110, 134-135 (1978). Since the board offers no legislative history to support the conclusion that the city council affirmatively intended to ratify the interpretative

---

[7] *Welch* v. *Commissioner of Corps. & Taxation*, 309 Mass. 293 (1941), cited by the board, is inapposite because in that case the legislative history affirmatively demonstrated legislative intent. *Id.* at 299-300.

regulation (prior to the plaintiff's purchase of the unit), any ratification argument must fail.

Second, the board argues that the city council's inaction vis-à-vis regulation 13-01(u) is evidence of its belief in the validity of that interpretation, and buttresses that argument with the fact that, on a date well after the plaintiff's purchase, a city councillor introduced an amendment which would have overruled regulation 13-01(u), but which was rejected. In the context of statutory construction we have held that "inaction by a subsequent legislative body 'has no persuasive significance' with reference to the intent of the Legislature which passed the original bill." *Massachusetts Comm'n Against Discrimination* v. *Liberty Mut. Ins. Co.*, 371 Mass. 186, 193-194 (1976), quoting *Devlin* v. *Commissioner of Correction*, 364 Mass. 435, 442-443 (1973). The meager evidence adduced, coming as it did well after the passage of the ordinance and the purchase of the unit, does not justify a departure from this rule.

Third, the board adduces various subsequent acts of the city council which are aimed to demonstrate that a subsequent city council adopted the view that the intent of the prior city council, in passing Ordinance 926, was to incorporate the definition contained in regulation 13-01(u). We are inclined to give subsequent city council views on Ordinance 926 "very little, if any, significance." *United States* v. *Southwestern Cable Co.*, 392 U.S. 157, 170 (1968). Compare *Selectmen of Pembroke* v. *R. & P. Realty Corp.*, 348 Mass. 120, 124-125 (1964). But, in any case, we will not hold the plaintiff responsible for divining the intent of the city council which enacted Ordinance 926 when the only source of that intent is that a subsequent city council would have used the definition contained in regulation 13-01(u). The plaintiff was entitled to rely on the plain terms of that ordinance, and was therefore exempt from the removal permit requirement.[8]

---

[8] The board also argues that their interpretation is necessary to effectuate the purposes of the ordinance, and that any other interpretation would allow tenants to purchase units without obtaining removal permits, thus defeating the rent control scheme. Ultimately, Ordinance 926 and the Cambridge

We must finally decide whether Ordinance 980 should be applied retroactively to the plaintiff, and require her to have a removal permit.

In *Flynn* v. *Cambridge*, 383 Mass. 152 (1981), this court upheld Ordinance 926 against constitutional attack distinguishing two classes of owners. The first class are "owners who purchase their condominium units after the effective date of the ordinance." *Id.* at 159-160. They are on notice that they have no right to use their property as owner-occupied housing," *id.* at 160. The second class of owners, owners who purchased before the effective date of Ordinance 926, whose units were being used at that time for rental housing, were not subject to a taking because the ordinance did not interfere with their primary expectations concerning the use of the property, and they were still entitled to a reasonable return on their investments. *Id.* at 160-161. A third class of owners, typified by the plaintiff here, differs substantially from the second class of owners. Unlike those owners in *Flynn*, these owners had a primary expectation to live in their units. The second class of *Flynn* owners presumably bought and held rental properties primarily as an investment, with the belief that they could exercise, if they chose, the right of occupancy. Here, however, the owner purchased with the reasonable belief that Ordinance 926 conferred upon her the right to buy her unit and remain in it. If Ordinance 980 were to be applied retroactively, it would thereby interfere with the plaintiff's primary expectation concerning the use of the property. Neither *Flynn* nor *Penn Cent. Transp. Co.* v. *New York City*, 438 U.S. 105, reh'g denied, 439 U.S. 883 (1978), permits interference with an owner's *primary* expectation concerning the use of the property.

---

Rent Control Act, St. 1976, c. 36, are aimed at providing *housing*. There is nothing inconsistent with allowing tenants to purchase their units and live in them. If the board is fearful of fraudulent conversion, or eventual transfers of ownership leading to a decline in housing stocks, it could specify tenancy periods prior to purchase, or even provide for reversion, under certain conditions, of owner occupied housing to the rental market. Nothing in § 1(c) of Ordinance 926 buttresses the board's arguments or contravenes this logic.

In this case the plaintiff purchased with the reasonable belief that she was entitled to buy her unit and continue to live in it. The board would physically exclude her from living in her unit as owner, and would require that the unit be made available for physical occupation by a tenant. If the board were to exclude her from her property in this way, there would be a taking for which she would be entitled to just compensation.[9]

We therefore answer that the plaintiff was not required to apply for a removal permit under Ordinance 926 in order to lawfully occupy, as owner, unit 308 at 50 Follen Street, Cambridge. We assume that the board did not intend that Ordinance 980 be applied to her in such a manner as to constitute a taking of her property for which she would be entitled to just compensation.

We answer the reported questions 1 and 4, "No." We do not answer questions 2 and 3. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[9] The board cites the dismissal of two cases by the United States Supreme Court, *Fresh Pond Shopping Center, Inc.* v. *Rent Control Bd. of Cambridge*, affirmed by order of an equally divided court, 388 Mass. 1051, dismissed for want of a substantial Federal question, sub nom. *Fresh Pond Shopping Center, Inc.* v. *Callahan*, 464 U.S. 875 (1983), and *Nash* v. *Santa Monica*, 37 Cal.3d 97 (1984), dismissed for want of a substantial Federal question, 470 U.S. 1046 (1985), both without opinion by the Court. Even assuming (as we need not) that the dismissals were because the lower courts applied well-settled principles of constitutional law, see *Patterson* v. *Stanolind Co.*, 305 U.S. 376, 379 (1939), it appears that the cases presented are distinguishable from the one at hand. In both cases the owner did not seek to occupy the premises in question for habitation. Instead the owners sought to demolish the premises (destroying rental potential) for economic gain. See *Fresh Pond Shopping Center, Inc.* v. *Callahan*, 464 U.S. at 875-876; (Rehnquist, J., dissenting); *Nash* v. *Santa Monica, supra.*