JOHN J. VINCENT *vs.* RENT CONTROL BOARD OF CAMBRIDGE. December 2, 1986. *Rent Control,* Removal of unit from market, Controlled rental unit. *Cambridge. Statute,* Construction.

There is a controlling date: January 1, 1969. On that date unit no. 1 in 109 Windsor Street, Cambridge, was lawfully in use as a neighborhood health clinic. Unit no. 2 became incorporated in the health clinic later, on August 1, 1969, and Unit no. 4, later still, on April 1, 1971. At those times, Cambridge did not require a permit to remove premises from residential use. In the summer of 1976, the clinic moved out of 109 Windsor Street and the three units underwent conversion to apartments. The question for decision is whether the resulting apartments are subject to rent control or whether the owner of the premises may avail himself of § 3(b)(2) of the Cambridge rent control enabling act (St. 1976, c. 36), which exempts from control: "rental units the construction of which was completed on or after January one, nineteen hundred and sixty-nine, or which are housing units created by conversion from a non-housing use to a housing use on or after said date." The board concedes that unit no. 1 is exempt, but contends that units no. 2 and no. 4 are subject to rent control. A judge of the Superior Court ruled that units no. 2 and no. 4 are also exempt. From the ensuing judgment, the board has appealed.

We begin with the plain language of the statute. *Massachusetts Bay Transp. Authy.* v. *Massachusetts Bay Transp. Authy. Retirement Bd.,* 397 Mass. 734, 738 (1986). *Martin* v. *Rent Control Bd. of Cambridge,* 19 Mass. App. Ct. 745, 747 (1985). See *Rogers* v. *Metropolitan Dist. Commn.,* 18 Mass. App. Ct. 337, 339 (1984). Upon application of the plain language of the statute, the board loses ground. Units no. 2 and no. 4 "are housing units created by conversion from a non-housing use [i.e., medical clinic] to a housing use on or after [January 1, 1969]," and, it would seem, are, therefore, exempt from control.

Faced with this difficulty, the board reads into the word "created" a meaning beyond the ordinary definition of producing or bringing into being.[1] In its statutory context, the board suggests, "created" means production of a residential unit where none has existed before — ever. The board then reminds us that interpretation of a statute by an agency vested with the broad authority to effectuate the statutory purpose is entitled to great weight. *Polednak* v. *Rent Control Bd. of Cambridge,* 397 Mass. 854, 858 (1986). That principle, however, is "one of deference, not abdication." *Finkelstein* v. *Board of Registration in Optometry,* 370 Mass. 476, 478 (1976). *Polednak* v. *Rent Control Bd. of Cambridge,* 397 Mass. at 858. *Cliff House Nursing Home, Inc.* v. *Rate Setting Commn.,* 16 Mass. App. Ct. 300, 306 (1983).

If interpreted in accordance with what appears to be the board's view of § 3(b)(2), a building converted from apartments to offices in 1952 would, if converted back to apartments in 1986, fail to qualify for exemption. Such

---

[1] See American Heritage Dictionary 338 (2d College ed. 1982).

a consequence would run counter to the policy of the board and its enabling statute, St. 1976, c. 36, to maximize the rental housing stock in Cambridge. Cf. *Anastasi* v. *Rent Control Bd. of Cambridge,* 21 Mass. App. Ct. 606, 608 (1986). The board, therefore, does not go quite so far; it focuses on the operative date in § 3(b)(2), January 1, 1969, and argues that if a unit was used as housing on or after January 1, 1969, it could not be converted from a nonhousing to a housing use after that date without being subject to rent control. In order to arrive at the board's construction, the phrase "of a unit which was never used for housing after January 1, 1969" needs to be added to the clause. No such language, of course, appears. As in *Polednak* v. *Rent Control Bd. of Cambridge,* 397 Mass. at 859, the board seeks "to introduce a time limitation on an exception" which the enabling act provides without limitation. There need be no concern that the exemption could be manipulated by withdrawal of a unit from residential use and quick conversion back. The board since 1979 has had the power to regulate the withdrawal of residential units from the market and to make reasonably sure that withdrawal is for a bona fide purpose. See *Flynn* v. *Cambridge,* 383 Mass. 152 (1981), and see, now, c. 23 of the Code of the City of Cambridge, Ordinance 966.

In support of its construction of St. 1976, c. 36, § 3(b)(2), the board cites five cases from New York: *Lord Management Corp.* v. *Weaver,* 11 N.Y.2d 180 (1962); *Eckert* v. *McGoldrick,* 284 A.D. 810 (1954); *DeRosa* v. *Weaver,* 3 A.D.2d 729 (1957); *Region Holding Corp.* v. *Weaver,* 4 A.D.2d 766 (1957); and *Robeson* v. *Gabel,* 49 Misc. 2d 886 (N.Y. Sup. Ct. 1966). We have examined those opinions and do not find them instructive about the problem at hand. Two of the cases, *Lord Management* and *Robeson,* appear to turn on a statutory condition, not present in St. 1976, c. 36, that only "additional housing accommodations" would qualify for decontrol. A third case, *Region Holding,* was decided on the ground that residential use of the unit in question had never ceased. The *DeRosa* and *Eckert* cases turn on the conclusion that no nonhousing use had ever matured.

The judgment that units no. 2 and no. 4 at 109 Windsor Street, Cambridge, are not controlled rental units within the meaning of St. 1976, c. 36, § 3(b), is affirmed.

*So ordered.*

*Seth B. Haber* (*Patricia A. Cantor* with him) for the defendant.
*John P. Moss, Jr.,* for the plaintiff.