Slade *v.* McLaughlin.

JANICE SLADE *vs.* MICHAEL E. MCLAUGHLIN, trustee,[1]
& another.[2]

Middlesex.    March 6, 1987. — October 2, 1987.

Present: GRANT, ARMSTRONG, & PERRETTA, JJ.

*Rent Control,* Controlled rental unit, Removal of unit from market. *Cambridge. Municipal Corporations,* By-laws and ordinances, Rent control.

Where an apartment unit had not been rented or offered for rent for at least four years prior to the effective date of an ordinance of the city of Cambridge restricting the removal of rental units from the residential housing market, and had not thereafter been rented at any time prior to its owner's combining it with another to make a single unit, the first apartment was not a "controlled rental unit" within the meaning of the ordinance, and consequently, its owner was not required to obtain a removal permit from the city's rent control board before combining it with the second apartment. [780-781]

CIVIL ACTION commenced in the Cambridge Division of the District Court Department on August 22, 1985.

The case was heard by *James W. Bailey,* J.

*George P. Butler, III,* for Michael E. McLaughlin, trustee.

*John J. Barter* for the plaintiff.

PERRETTA, J. When, in 1985, the owner of a building containing four apartments knocked through a wall and made other changes to convert two vacant units into one, the plaintiff tenant complained to the rent control board of Cambridge (board). The hearing officer concluded that the owner had removed a rental unit from the rental market without having first obtained a removal permit from the board in accordance with c. 23 of the Code of the City of Cambridge, Ordinance

[1] Trustee of the Inman Trust.

[2] The rent control board of Cambridge, which neither filed a notice of appeal nor otherwise participated in the proceedings before us.

926, § 1(c).[3] The board did not accept the hearing officer's recommended conclusion. It concluded instead that, because one of the two units had become vacant prior to 1975, and had not thereafter been rented at any time prior to the conversion, the ordinance, which did not take effect until August 10, 1979, had not been violated. On the plaintiff's appeal to a District Court under § 10 of the Cambridge Rent Control Act (Act), see now St. 1985, c. 399, § 3, the judge concluded that the ordinance controlled and reversed the decision of the board. Because we conclude that a removal permit was not required as the apartment was not a "controlled rental unit" within the meaning of the Act and the ordinance, we reverse the judgment.

I. *Unit 2F.*

Until March of 1985, the building in question contained four apartments. The plaintiff has resided in unit 3 since well before 1975. Unit 2R was occupied by another long-term resident who voluntarily vacated his apartment in February, 1985.

Unit 2F has been vacant either "since 1971" or "since at least prior to 1975 until the present,"[4] that is, at the time of these proceedings. It is immaterial to our conclusion which of these dates is more nearly correct. There is no dispute that unit 2F first became (and remained) vacant long before August 10, 1979, the effective date of the controlling provision of the

---

[3] Ordinance 980, of April 26, 1982, amended Ordinance 966, of June 29, 1981, which had incorporated the relevant portions of the prior Ordinance 926. For purposes of continuity and consistency with cases construing other portions of Ordinance 926, and cited *infra*, we too refer to Ordinance 926. See, e.g., *Polednak* v. *Rent Control Bd. of Cambridge,* 397 Mass. 854, 856 n.2 & n.3 (1986).

[4] In refusing to accept the hearing officer's recommendation, the board found that the unit "had not been offered for rent since 1971." The board made no other findings, its conclusion resting on the date of vacancy and the effective date of the ordinance. In reversing the board, the judge made findings of fact tracking those of the hearing officer, including the finding that set the date of vacancy at "since at least prior to 1975 until the present." There are no material facts in dispute, and the parties do not argue to the contrary. See *Amari* v. *Rent Control Bd. of Cambridge,* 21 Mass. App. Ct. 598, 603 n.11 (1986); *Anastasi* v. *Rent Control Bd. of Cambridge,* 21 Mass. App. Ct. 606, 607 n.5 (1986).

ordinance. When unit 2F first became vacant, the then owner "chose not to rent . . . [that unit] because in those years he felt the available rent units would be taken by 'hippies,' and he did not want any more 'hippies' ruining his units."

In November, 1984, that owner sold the building to another, who, three weeks later, conveyed title to joint owners. One of the two new owners, along with his family, took up temporary residence in unit 1 while awaiting the completion of construction of a house. Construction had been in progress for about a year but had been delayed by various disputes with the architect concerning the design and the plans. The disputes were resolved and occupancy of the house was scheduled for February, 1985. At that time the building in question was sold to the defendant. Some time in March, he broke through the wall between units 2F and 2R and made other renovations combining the two units.

II. *The Ordinance*.

We need not recite the history of the Act or the ordinance. See generally, *Flynn* v. *Cambridge*, 383 Mass. 152, 154-156 (1981); *Polednak* v. *Rent Control Bd. of Cambridge*, 397 Mass. 854, 855-857 (1986); *Amari* v. *Rent Control Bd. of Cambridge*, 21 Mass. App. Ct. 598, 603-604 & n.11 (1986). It is sufficient to state that "[u]ntil August 10, 1979, removal of rental housing from the market was unregulated." *Id*. at n.11. As of that date, removals came under the board's authority pursuant to § 1(c), which reads, in pertinent part: "No owner or other person shall remove from the market any controlled rental unit, unless the board after a hearing grants a permit."

Under § 1(b)(3) of the ordinance, a "controlled rental unit" has the same meaning as that given in § 3(*b*) of the Act, which is, "all rental units" with certain exceptions not here applicable. As defined in relevant part by § 3(*a*) of the Act, the term "rental units" has the following meaning: "any building, structure, or part thereof . . . rented or offered for rent for living or dwelling purposes . . ." (emphasis supplied).

As unit 2F had not been "rented or offered for rent" for at least four years (if not longer) prior to August 10, 1979, it was not a "controlled rental unit" when the ordinance took

effect. Because the unit was not "rented or offered for rent" at any time after the ordinance was in effect, it was not a "controlled rental unit" when the defendant combined it with unit 2R.

In reliance upon *Martin* v. *Rent Control Bd. of Cambridge,* 19 Mass. App. Ct. 745 (1985), the plaintiff tenant argues that whether a removal permit is required is determined by the physical nature of the building on the date of the merger of the two units, March of 1985, and not the effective date of the ordinance. It is urged that, because the building had remained a four-unit building up to 1985, the defendant could not remove a rental unit from the housing stock without the board's permission.

*Martin* is not here controlling. The limited issue there presented was whether the term "two-family" or "three-family" house as used in § 3(*b*)(6) of the Act was to be defined by the number of families occupying the units or by the number of units. There the owner purchased the four-unit building in 1976 and occupied one unit with his wife and children until the unit beneath his became vacant in July, 1979. At that time, the owner and his family expanded their occupancy into that unit without making any structural changes or renovations. In November of 1979 the owner requested the board to change the status of the building from a four-unit building subject to rent control to an exempt three-family house under § 3(*b*)(6). The court concluded, 19 Mass. App. Ct. at 747-748, that the "term 'two-family or three-family' house, as used in the Act, denotes a certain type of structure which is designed to be lived in by two or three families" and that "[s]o viewed, the term refers to the physical characteristics of the structure, not to the relationships of the persons who may occupy it." In reaching its conclusion, the court specifically left open the questions whether the owner could qualify for the exemption by making structural changes to merge the units and whether "[i]n order to effect such a transformation, a removal permit under the present terms . . . [of the ordinance] might be necessary." 19 Mass. App. Ct. at 749 n.4.

Unlike the language of § 3(b)(6) of the Act denoting a certain type of structure or building, the language of § 1(c) of the ordinance speaks to the use of the unit (or building, as the case may be), as of a certain date. See also, § 1(b) of the ordinance defining those uses and acts constituting a removal. On the undisputed facts here presented we need not establish that date as matter of law.[5] When the defendant purchased the four-unit building, one of the units had not been "rented or offered for rent" for some ten years.

There is nothing in the ordinance which evidences an intent to authorize the board to reach back that number of years and conclude that the defendant had removed a "controlled rental unit" from the Cambridge housing stock without first obtaining a removal permit. See *Nantucket Conservation Foundation, Inc.* v. *Russell Management, Inc.,* 380 Mass. 212, 215 (1980). Even were such an intent apparent, it would not be enforceable for the reasons discussed in *Flynn* v. *Cambridge,* 383 Mass. at 159-160, and *Polednak* v. *Rent Control Bd. of Cambridge,* 397 Mass. at 861-862.

III. *Conclusion.*

It follows from what we have said that the judgment is reversed, and the matter is remanded to the District Court for the entry of a judgment affirming the decision of the rent control board of Cambridge.

*So ordered.*

---

[5] It is conceivable that, notwithstanding the passage of time (since August 10, 1979), there might be instances where the board is presented with facts upon which it could conclude that a unit had been left vacant, deliberately and temporarily, either just before or at some time after August 10, 1979, in order to avoid the requirements of the ordinance. We intimate no view on what the board could or should do in such a situation. See, e.g., *Martin* v. *Rent Control Bd. of Cambridge,* 19 Mass. App. Ct. at 749-750 n.4.