CITY OF LYNN *vs.* CELIA OLANOFF.

Essex. May 5, 1943. — June 29, 1943.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & COX, JJ.

*Zoning. Lynn.*

Evidence did not show to be plainly wrong a finding that a suite of four rooms and a bathroom on the third floor of a dwelling house in Lynn was being used as a "separate and distinct housekeeping unit," which, in the circumstances, was in violation of the city's zoning ordinance.

BILL IN EQUITY, filed in the Superior Court on December 1, 1942.

The suit was heard by *Warner*, J.

*R. L. Sisk*, (*N. Ogan* with him,) for the defendant.

*P. F. Shanahan*, City Solicitor, for the plaintiff.

LUMMUS, J. This is a bill in equity under G. L. (Ter. Ed.) c. 40, § 30B, inserted by St. 1938, c. 133, § 2, to restrain the use of the defendant's premises at 11 King's Beach Road in Lynn for a three-family house, in violation of a zoning ordinance. *Pitman* v. *Medford*, 312 Mass. 618, 621. The defendant appealed from a final decree in favor of the plaintiff. The case comes here upon findings of fact and a full report of the evidence.

The zoning ordinance classified the premises as in a "general residence district," in which were allowed, among other things not material, "one-family detached houses" and "semi-detached and two-family dwellings." Houses for more than two families were not allowed. A two-family house is defined as "a detached dwelling designed for and occupied by two families." A family is defined as "any

number of individuals living together as a single house-keeping unit."

The defendant applied to the local board of appeals to vary the application of the zoning ordinance to her property by permitting alterations in the third floor to provide accommodations for a third family. She intended that the third family should consist of her son, his wife, and their baby. Her application was denied, and the denial was upheld by the Superior Court on appeal.

The defendant then filed with the board of appeals a new application for a variance by allowing the extension of a dormer window and the alteration of the third floor by providing for four bedrooms with "no change in character or occupancy." On April 16, 1942, the application was granted "on condition that no room on the third floor be changed or altered to resemble in any respect a kitchen unit with respect to installation of kitchen case work, cooking unit, kitchen plumbing (either rough or finished), illuminating gas supply, or electric work arranged to be on separate meters; and provided further that the third floor rooms shall not be used as a separate and distinct housekeeping unit — the proposed rearrangement of rooms to be in accordance with the arrangement shown on 'attic floor plan revised' dated April 9, 1942, filed with the City of Lynn Building Department."

At the time when the application for a variance was granted the house was a two and a half story house occupied by two families, that of the defendant's daughter on the first floor and that of the defendant herself on the second floor. There was a bathroom on the third floor, both before and after the alterations. The plans for the alterations called for a master bedroom and three other bedrooms, besides the bathroom. There were two dormer windows to increase the height of the rooms as well as to provide additional light and air.

Further evidence may be summarized as follows. When the alterations were completed, inspectors of the building department examined the house. In the room called the master bedroom, where there was no bed, they found a gas

range with an oven and three or four burners; an electric
refrigerator; a kitchen cabinet with cupboards or lockers
with doors and shelves, and in it silverware, dishes, pots
and pans; and a painted table with two or three chairs,
comprising what is commonly sold in furniture stores as a
breakfast set. The walls were painted, and there was lino-
leum on the floor. But there was no sink. In the bathroom
there was a tub, a wash bowl and a water closet. In one of
the rooms called a bedroom they found a rug on the floor, a
piano, living room furniture including upholstered chairs,
and shelving for books and bric-a-brac, but no bed. There
were only two gas and electric meters for the house, and
only one water meter. There was no separate meter for
the third floor. There was no separate entrance for the
third floor, and no door shutting it off from the second
floor.

The defendant's son and his wife and their baby have
slept on the third floor since the alterations, but the defend-
ant introduced evidence that they "live" on the second
floor with the defendant and her husband. When the in-
spectors examined the house, however, they found the son's
wife preparing the baby's milk in the so called master bed-
room. The son testified that he and his wife eat only two
or three meals a week at home, and then eat with his mother
on the second floor. But a neighbor living on the opposite
side of the street testified that she had seen the son and his
wife and visitors on the third floor, in the daytime and up
to midnight, from the early spring of 1942 until late in the
fall, and that the third floor had been lighted from dusk
until midnight. She testified that there are three doorbells
at the front door.

Upon the evidence which has been summarized, the judge
found as follows: "I find as a fact that the use of the third
floor of the dwelling located at 11 King's Beach Road in
Lynn in said county is as a separate and distinct house-
keeping unit, consisting of the usual kitchen with dining
facilities, living room and two bedrooms and bath, as al-
leged in the plaintiff's bill, and that the said use for three
families is contrary to and in violation of the zone ordinance

of the city of Lynn." An examination of the evidence convinces us that this finding cannot be said to be plainly wrong.

*Decree affirmed with costs.*