In the Matter of ·Bertha U. Stafford, Petitioner, against Incorporated Village of Sands Point, Respondent.

Supreme Court, Special Term, Nassau County, February 20, 1951.

*Francis B. Froehlich* for petitioner.

*Robert J. Rose, Jr.,* for respondent.

Cuff, J. Motion by petitioner to compel respondent to issue to petitioner a certificate of occupancy. Petitioner has erected a $75,000 ranch type residence in an area restricted to one family residences in respondent village and has applied for a certificate of occupancy which respondent has denied because respondent holds that the residence as constructed is a two-family dwelling. It seems that respondent had issued a building permit to petitioner on November 28, 1949, to erect this particular house. Petitioner made changes as the building was being constructed, one of which (the main objection of respondent) was to change the utility room into a kitchen, thus providing two kitchens in the building. A certificate of occupancy was refused by respondent's building inspector (September 20, 1950) because of the presence of those two kitchens which the building inspector said signified that a two-family house was

being built. The owner, on October 26, 1950, appealed from the building inspector's ruling to the board of zoning appeals, but during the hearing on that appeal (October 26, 1950) adopted a suggestion that the owner file amended plans with the building inspector so that the plans would then conform with the building. The appeal was withdrawn without prejudice. The new plans were filed (October 27, 1950). They showed the additional kitchen where the utility room had been on the original plans. On December 11, 1950, the respondent again refused to issue the certificate of occupancy, application for which was based upon the amended plans, because "the premises are being used as a two-family dwelling".

It would appear that the only proof before respondent when considering this application was the plans and the oral statements of the building inspector (which must be inferred, because they are not recorded) who had visited the dwelling. The return states that on the amended plans the utility room was constructed to serve as a kitchen. That is conceded by petitioner who goes further and states that it was changed to a kitchen. The return further states that "maids' rooms" were constructed "as and for bedrooms for either sister or mother of petitioner". No proof of any kind was offered before respondent to sustain that allegation. The return also alleges that "other characterized rooms appearing on the plans and specifications, accommodations in the nature of a living-room, were also provided either contiguous to or adjacent to the sleeping quarters of the sister or mother of the petitioner". That would seem to be a conclusion drawn by respondent from the plans and from what someone may have told respondent. Examining the elaborate plans for this elaborate dwelling, I cannot find any evidence to support that conclusion. No other reasons are given in the return to account for respondent's denial of petitioner's application. It would seem that the denial was not based upon proof of any kind.

This court fully appreciates that the petition sounds in mandamus while I have searched the record as I would in a certiorari application. I have done that because I recognize no defense whatever to a mandamus order where as the return seems to indicate respondent came to its decision after some form of hearing or investigation. Article 78 of the Civil Practice Act, as amended in 1937 (L. 1937, ch. 526), allows consideration and relief without rigidly holding the applicant to the form of relief he applied for (Tripp's Guide to Motion Practice [Rev. ed.], p. 444).

Petitioner's attorneys evidently sense another objection of the respondent, viz., that petitioner's mother and sister are living and will live in the dwelling. Except for the allegation in paragraph 5 of the return that '' the maids' rooms were constructed as and for bedrooms for the sister or mother of the petitioner '', the record is wholly silent with respect to those people. However, assuming that they are to reside permanently in the dwelling, that would not render it a two-family house. The accepted definition of a two-family house may be found in the Multiple Dwelling Law where it provides that, '' A building designed for *and* occupied exclusively by two families is a ' two-family private dwelling ' '' (emphasis supplied; § 4, subd. 6), and a '' ' single-family private dwelling ' '' is a building '' designed and occupied exclusively by one family '' (§ 4, subd. 6). As might be expected, neither the design of the house nor the nature of its occupancy standing alone controls. The combination of the design of the house *and* the nature of the occupancy is the twofold test. The word '' design '' in the definition need not be commented upon. In saying that, I am not unmindful of the fact that respondent leans heavily, I would say entirely, upon design for its objection to petitioner's building. I consider that comment on the word '' family '' will more than suffice. Taking respondent's objection at face value, it considers that the design, including two kitchens and other possible uses for rooms labeled in plans to the contrary, together with the presence on the premises of petitioner's mother and sister, render petitioner's dwelling into one being used as a two-family house. What does '' family '' mean in that last expression? Our '' family '' is derived from the Latin *familia*. Originally the word meant servant or slave. Now its accepted definition is '' a collective body of persons living together in one house, under the same management and head, subsisting in common, and directing their attention to a common object, the promotion of their mutual interests and social happiness.'' Then again, '' as used in statutes of descent, the word is usually construed to mean those who have the blood of the ancestor.'' Another, '' All those persons who constitute the members of the same household.'' (See Ballentine's Law Dictionary, p. 488). '' Household '' means '' Persons who dwell together as a family.'' (P. 597.)

No local ordinance defining the words '' one family house '' or '' two family house '' has been called to my attention. No meaning may be ascribed to accepted legal terms except the legal definitions of those terms. It would seem that as far as

occupancy goes, to classify premises as a two-family house there would have to be two separate families not living together as a unit. The using of a dwelling for living purposes by a son, his family (although no mention is made of petitioner's family) and his mother and sister, in the absence of evidence to the contrary, may not be said to be the setting up of two separate family units who are living not under a single head or management for the purpose of denying a certificate of occupancy in a one-family district.

There is no provision in respondent's Building Zone Ordinance stating when and under what conditions a certificate of occupancy should be issued. The only reference to the subject is section 504-a of article V. It seems that petitioner has established a clear legal right to the certificate of occupancy for which she applied. A peremptory order, with costs, directing its issue will be submitted.