G-eoege Beisheim, J.
The petitioners in this article 78 proceeding seek an order annulling the resolution of the Zoning Board of Appeals of the Villiage of Croton-on-Hudson denying petitioners’ application for an interpretation of portions of the Zoning Ordinance of the Village of Croton-on-Hudson which would permit petitioners to install a second kitchen and a half bath in a one-family residence, located in a one-family BA-25 District, at 8 Observatory Drive in said village; or, in the alternative, granting petitioners a variance permitting the installation of the aforesaid second kitchen and half bath.
The pertinent findings of the board were as follows:
“ It is the finding and conclusion of the Board that the addition of the second kitchen and additional half-bath will ‘ de facto ’ create separate and complete housekeeping facilities in a one family dwelling. The fact that ‘ all doors shall remain open ’ and that the house will be shared in common by all the present occupants is not the criteria for determing [sic] whether an additional self-contained housekeeping facility does exist.
“ The interpretation of the ordinance based upon the facts and circumstances presented does not permit the installation of a second kitchen and a half bath as an additional dwelling unit would in fact be created even though the possible partitions of a unit as such have not been described. * * *
‘ ‘ Applicants stated that the house and property are of considerable value and conceded that the denial of the variance would not create economic hardship. Since the additions, as proposed, would create separate, complete housekeeping facilities, converting a single family dwelling into a two family dwelling the variance requested is denied.”
The room layout of1 the premises in question is outlined in two rough sketches attached to the petition as Exhibit A. The first sketch depicts the ground floor and the second sketch the second floor of the premises. No compass directions are set forth on the sketches, but viewing the ground floor sketch from the point of view of the observer, a master bedroom is shown on the extreme right of the sketch, a living room to the left of the master bedroom and a study to the left of the living room. To the rear of the living room is a TV room and in front of the *704 living room is an enclosed porch which petitioners propose to convert into the second kitchen. To the left of approximately the front half of the enclosed porch is the existing kitchen. In back of that, to the left of the remainder of the enclosed porch, is a dining room, the dining room being in front of the study and a small part of the living room. To the far left of the sketch and left of the existing kitchen is a small room called a “ mud room ”.
The sketch of the second floor reveals a bedroom and bath over the master bedroom depicted on the first floor sketch, a comment “ open to first floor ” over the living room, from which the court infers that the living room must have a very high ceiling with no living space on the second floor above it. There is another bedroom immediately over the study, in front of which are two bathrooms and a walk-through closet and another bedroom in front of the bathrooms and walk-through closet which appears to be over most of the existing kitchen. There is nothing on the second floor over the enclosed porch.
Article IX of the Zoning Ordinance, which is the article dealing with the duties and powers of the Board of Appeals, grants said board, among other things, the f ollowing power:
“ 9.2.1. Interpretation. On appeal from an order, requirement, decision or determination made by an administrative official, or on request by any official, board of [sic] agency of the Village, to decide any of the following questions:
‘ ‘ 9.2.I.I. Determination of the meaning of any portion of the text of this Ordinance or of any condition or requirement specified or made under the provisions of this Ordinance.” Article III, being the article involved with district use regulations, contains, inter alia, the following provisions:
“ Section 3.1. One-family Residence RA-40 District “ 3.1.1. In a one-family RA-40 District, no building or premises shall be used and no building or part of a building shall be erected or altered which is arranged, intended or designed to be used, in whole or in part, for any uses except the following; and all uses and buildings shall conform with the District Bulk and Parking Regulations in Article IV and the following regulations, whichever are more restrictive: * * *■
1 ‘ 3.I.I.2. One family detached dwellings not to exceed one such dwelling on each lot, and subject to the District Bulk and Parking Regulations in Article IV. * * *
“ Section 3.2. One-family Residence RA-25 District “ 3.2.1. In a One-family Residence RA-25 District no building or premises shall be used, and no building or part of a building *705 shall he erected, which is arranged, intended or designed to he used, in whole or in part, for any purpose, except the following:
11 3.2.I.I. Any use permitted in One-Family Residence RA-40 Districts and subject to all regulations therefor.”
Article XIII, section 13.1, of the Zoning Ordinance defines a dwelling unit as follows: ‘ ‘ Dwelling Unit — A building or entirely self-contained portion thereof containing complete housekeeping facilities for only one family, including any domestic servants employed on the premises and having no enclosed space (other than vestibules, entrance or other hallways or porches) or cooking or sanitary facilities in common with any other ‘ dwelling unit ’. ’ ’
Petitioners’ premises are owned half by the petitioners, who are husband and wife, and half by Arthur E. Williams and Emma A. Williams, the father and mother of the petitioner, Arthur Robert Williams. Petitioners’ reasons for wishing to install a second kitchen are summarized in the last eight lines of paragraph “ 5 ” of the petition as follows: “ Petitioners wish to install a second kitchen in the encolsed porch because the existing kitchen is too small for their needs. In addition, petitioner Arthur R. Williams’ father suffers from diabetic neuritis and therefore requires a special and sensitive diet and must consume food constantly. A second kitchen would provide a convenience for the family and would permit the elder Williams to eat an occasional quiet meal without the usual din created by the younger Williams ’ three healthy, normal youngsters. No persons other than those above described would reside in the dwelling.
In their application before the Board of Appeals, petitioners made no mention of that part of their contention aforesaid that Arthur E. Williams was a diabetic requiring a special diet. Since this evidence was not before the Zoning Board, the court shall not consider it in reviewing the board’s decision.
Petitioners claim that they, their three children and the father and mother of one of the petitioners constitute a family within the provisions of article XIII of the Zoning Law which defines a family as follows: “ Family — One or more persons occupying a dwelling unit as a single non-profit housekeeping unit. More than five persons exclusive of domestic servants, not related by blood, marriage, or adoption, shall not be considered to constitute one family.”
Petitioners also claim that since there would be no partitions erected in or between any of the rooms of their home, that the *706 construction of a second kitchen would not alter the home to something other than a one-family dwelling.
Respondents argue that since the dwelling has at least four entrances on the main floor through at least two rooms, and in view of the room arrangement therein, that the erection of the Second kitchen would convert the dwelling in every respect to a two-family dwelling.
Petitioners rely upon the cases of Matter of Kaufman (N. Y. L. J., Feb. 11,1969, p. 16, col. 2) and Matter of Stafford v. Incorporated Vil. off Sands Point (200 Misc. 57). The Stafford case laid down a twofold test bearing upon the question whether a dwelling was a one-family or a two-family dwelling, to wit: (a) the design of the house; (b) the nature of the occupancy thereof. The court held that the design of the house did not readily lend itself to a two-family use despite the fact that the house contained a second kitchen and that the nature of the occupancy thereof was by one family, to wit, the petitioner and “ his family ” (although the record does not reveal the number of persons constituting such family) and petitioner’s mother and sister. In arriving at its decision, the court accepted the definition of a two-family house as set forth in the Multiple Dwelling Law which provided that ‘ ‘ a building designed for and occupied exclusively by two families is a ‘ two-family private dwelling ’ ’ ’ (§ 4, subd. 6) and a “ ‘ single-family private dwelling ’ ” is a building “ designed for and occupied exclusively by one family ” (§ 4, subd. 6). The case at bar is distinguished from the Stafford case (supra), in that the Village of -Croton-on-'Hudson Zoning Law (§ 13.1) defines a “ Dwelling, one family ” as “A detached building containing one dwelling unit only ’ ’. Said section further defines a dwelling unit as “A building * * * containing complete housekeeping facilities for only one family”. - (Emphasis supplied.)
The court, in examining the two sketches constituting petitioners’ Exhibit A, is of the opinion that were the second kitchen installed, that the second kitchen, living room, TV room and master bedroom on the first floor along with the bedroom and bath over the master bedroom on the second floor, with no further alterations whatsoever, would constitute a complete dwelling unit, and that the existing kitchen, mud room, dining room and study on the first floor, along with the two bedrooms and two baths and walk-through closet on the second floor, would constitute a second complete dwelling unit. Thus, the housekeeping facilities would be for more than “ only one family ” and would not be a one-family dwelling as defined by the Zoning Ordinance.
*707 The court finds that, under the definition of the Croton Zoning Ordinance, petitioners’ premises under the proposed alterations would be a two-family dwelling (Owens v. Michaelis, 22 Misc 2d 107; Rosenblatt v. Druck, N. Y. L. J., July 20, 1945, p. 130, col. 6). The court also believes that Matter of Kaufman (supra), relied upon by petitioners, is clearly distinguishable from the case at bar in that the second kitchen in the premises involved in the Kaufman case was made necessary by reason of the fact that petitioner’s mother-in-law, because of her religious beliefs, required a kosher kitchen along with separate sets of dishes, separate cooking utensils, etc., in accordance with the tenets of the Orthodox Jewish faith.
The court is inclined to agree, as a matter of logic, with the interpretation of the Board of Appeals as to the application of the pertinent provisions of the Zoning Ordinance to the facts in the case at bar. The court finds further that even if the court might, ab initio, have been constrained to interpret the Zoning Ordinance differently than the Board of Appeals construed it, in any event the interpretation by the board was not arbitrary and unreasonable, its findings were supported by the record, and, hence, should not be set aside (see Matter of Von Kohorn v. Morrell, 9 N Y 2d 27).
In conclusion, the court also finds that petitioners have failed to demonstrate any unusual hardship or economic deprivation which would have justified the Board of Appeals in granting them a variance (Von Elm v. Zoning Bd. of Appeals of Inc. Vil. of Hempstead, 258 App. Div. 989). According to the decision of the Board of Appeals, petitioners conceded that no hardship existed.
Accordingly, the petition for an order annulling the resolution of the Zoning Board of Appeals of the Village of Croton-onHudson, or, in the alternative, requesting a variance, is hereby dismissed.