COMMONWEALTH vs. LEON D. JAFFE
(and a companion case[1]).

Middlesex.  April 8, 1986. — July 15, 1986.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Zoning,* Multiple dwelling, Validity of by-law or ordinance. *Constitutional Law,* Zoning. *Words,* "Dwelling for not more than one family."

A provision of the zoning ordinance of the city of Newton prohibiting the design, arrangement, construction, or use of a building in a single residence district for any purpose other than as "a dwelling for not more than one family" was not unconstitutionally vague as applied in circumstances where a house was occupied by eight unrelated adults who evidenced "a complete lack of communal living" and whose lease provided that each could be evicted by their lessor without effect upon the tenancy of the others, and where the floor plan of the first two levels of the house, each containing a kitchen, bathroom, bedrooms and a common room, did not fit within the commonly understood meaning of a one-family dwelling. [54-55]

On appeal of defendants' convictions for violating a section of the zoning ordinance of the city of Newton by designing, arranging or constructing a structure as a dwelling for more than one family and by using the structure as a dwelling for more than one family, this court declined the defendants' request that it interpret "family" as a "single housekeeping unit" rather than a "biologically related family" where, on the facts as stipulated, the defendants would not have been aided by such an interpretation. [56-57]

At the trial of defendants charged with violating a section of the zoning ordinance of the city of Newton by designing, arranging or constructing a structure as a dwelling for more than one family and using the structure as a dwelling for more than one family, the evidence was sufficient to show that the defendants' building constituted at least a two-family dwelling under both the State Building Code, 780 Code Mass. Regs. § 201.3, and applicable decisional law. [57]

[1] Commonwealth vs. Shirley Jaffe.

We acknowledge the amicus briefs filed by Legal Assistance Corporation of Central Massachusetts on behalf of Marta Mojica and by Massachusetts Civil Liberties Union Foundation.

COMPLAINTS received and sworn to in the Newton Division of the District Court Department on January 16, 1985.

The cases were heard by *Arthur Sherman, J.*

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Gerald S. Cournoyer, Jr.,* for the defendants.

*Michael D. Baseman,* Assistant City Solicitor, for the Commonwealth.

*Marjorie Heins & Kathleen M. Sullivan* for Massachusetts Civil Liberties Union Foundation, amicus curiae, submitted a brief.

*Judith Kaye & Charles Vander Linden,* for Legal Assistance Corporation of Central Massachusetts on behalf of Marta Mojica, amicus curiae, submitted a brief.

ABRAMS, J. The defendants, the owners of an eight-bedroom house in the city of Newton that they rented to eight unrelated tenants, were convicted of violation of § 30-5(a) of the zoning ordinance of the city of Newton by designing, arranging, or constructing a structure as a dwelling for more than one family and by using the structure as a dwelling for more than one family.[2] In response to the defendants' motions for required findings, the judge found each defendant guilty on both counts on the basis of stipulated facts and a view of the premises.[3] He issued a memorandum in support of his decisions. The defendants appealed and we transferred the cases to this court on our own motion. We affirm.

The stipulated facts may be summarized as follows. In July, 1984, the defendants purchased a house at 58 Winthrop Street in West Newton. The purchase and sale agreement provided that a "stove in second-floor kitchen" was not included in the

---

[2] Newton Rev. Ord. § 30-5(a) (1984) provides: "In all single residence districts . . . no building, structure, or alteration, enlargement or extension thereof shall be designed, arranged, or constructed and no buildings, structures, land or parts thereof shall be used for any purposes other than a dwelling for not more than one family."

[3] The District Court judge imposed fines, surfines, and "victim witness" fees totalling $6,275 on each defendant, but did not specify for which offenses the fines were imposed. The fines were stayed pending appeal.

sale. The house is situated in a single residence B zoning district pursuant to a zoning plan entitled "City of Newton, Massachusetts, Amendments to Zoning Plan, adopted July 21, 1951, as amended."

The house contains both front and rear entrances with doors discharging on the first floor and two interior stairways. The first floor of the house contains an enclosed porch, a kitchen (with sink, stove, and refrigerator), a pantry, a bathroom, two bedrooms, and a common room. The doors of the bedrooms and common room provide access to the front hallway and to each other. The second floor contains a kitchen area (including sink, stove, and refrigerator), a common room, three bedrooms, and a bathroom. The third floor contains three bedrooms and a new bathroom. The defendants had obtained a building permit to construct the third-floor bathroom in late July, 1984.

The Newton building department allows second kitchens in single family dwellings in limited cases. The stipulated facts indicate that the Newton building commissioner has discretion to allow a second kitchen, if: (1) the dwelling is owner occupied, and not leased to tenants; (2) the owner submits a notarized letter to the building commissioner stating his reasons for requesting a second kitchen;[4] (3) the owner agrees to remove the second kitchen before sale of the dwelling; and (4) when submitted, the building plans for the second kitchen will be marked "no permanent additional kitchen" and placed in the building department's "Property File" which is kept on each structure by address.

On August 22, 1984, the building department received a written complaint alleging that the defendants' house was being

---

[4] For example, an owner may state that he desires a second kitchen for the following reasons: (a) The dwelling's present design creates great hardship or inconvenience to its residents because a great distance must be travelled to reach the kitchen. (b) The residents seek to have a "summer" kitchen, usually in the cellar level, which enables meals to be cooked during the summer without overheating the entire structure. Such a kitchen should not have bedrooms, a living room, and bathroom on the same level to avoid the creation of an independent dwelling unit and therefore a multiple family dwelling. (c) The residents require a separate, kosher kitchen for the observation of Jewish dietary laws.

converted into a two-family dwelling. The next day, a building inspector inspected the premises and was told by the defendant, Leon Jaffe, that there would be no stove on the second floor, and that there would be only one kitchen on the premises, on the first floor. At that time, there were no tenants living at the house.

On September 10, inspection of the house revealed a full kitchen on the first floor, with stove, refrigerator, sink, cabinets, and counters. The second floor contained a kitchen space with cabinets and counters, a refrigerator, and a new sink. No building permit had been issued for the original sink nor for its replacement by the defendants. There was no stove at this time.

A November 16 inspection by city officials revealed that a new electric stove had been installed on the second floor by the defendants without a building permit. No new electrical service was installed at this time.

As of September 1, 1984, the defendants leased the house to eight unrelated persons who occupy it as their principal residence. All of the tenants have keys to both the front and rear exterior doors. There are no interior locks other than one on a bedroom in which the occupant stores firearms, and one chain lock to keep a dog inside.

All eight tenants signed one "Standard Form Apartment Lease," which provides for a term of one year, beginning on September 1, 1984. Attached to the lease is an addendum, which provides in part that "[a]ny one tenant may be given thirty days' notice to vacate the premises by the Lessor without affecting the tenancy of the other tenants on this lease."

The District Court judge who viewed the house found that it contained two "conventional-type kitchens, all in accordance with the stipulations." He observed that there were several mailboxes adjacent to the front door bearing the names of the occupants and that "the premises were kept clean and orderly as any normal 'household.'" He concluded that the evidence showed "a complete lack of communal living."

On appeal, the defendants argue that the failure of § 30-5(a) of the Newton zoning ordinance, which prohibits the design,

arrangement, construction, or use of a building in a single residence district for any purpose other than a dwelling for not more than one family, is unconstitutionally vague because it fails to define the words "one family" and "a dwelling for not more than one family."

"A law is void for vagueness if persons 'of common intelligence must necessarily guess at its meaning and differ as to its application.' *Smith* v. *Goguen,* 415 U.S. 566, 572 n.8 (1974), quoting *Connally* v. *General Constr. Co.,* 269 U.S. 385, 391 (1926). Vague laws violate due process because individuals do not receive fair notice of the conduct proscribed by a statute, *Papachristou* v. *Jacksonville,* 405 U.S. 156, 162 (1972), and because vague laws that do not limit the exercise of discretion by officials engender the possibility of arbitrary and discriminatory enforcement, *Grayned* v. *Rockford,* 408 U.S. 104, 108-109 & n.4 (1972)." *Caswell* v. *Licensing Comm'n for Brockton,* 387 Mass. 864, 873 (1983). Although the words "one family"[5] may not be precise, "[z]oning is entitled to a strong presumption of constitutional validity (*Rosko* v. *Marlborough,* 355 Mass. 51, 53 [1968]), and courts should be wary of declaring zoning fatally indefinite." *Jenkins* v. *Pepperell,* 18 Mass. App. Ct. 265, 270 (1984).

In this case, we need not decide the definition to be given the words "one family" because the use of a house by eight unrelated adults who evidence "a complete lack of communal

---

[5] Black's Law Dictionary 543-544 (5th ed. 1979) defines "family" as follows: "The meaning of word 'family' necessarily depends on field of law in which word is used, purpose intended to be accomplished by its use, and facts and circumstances of each case. . . . Most commonly refers to group of persons consisting of parents and children; father, mother and their children; immediate kindred, constituting fundamental social unit in civilized society. A collective body of persons who live in one house and under one head or management. A group of blood-relatives; all the relations who descend from a common ancestor, or who spring from a common root. A group of kindred persons. . . . Husband and wife and their children, wherever they may reside, and whether they dwell together or not. The word conveys the notion of some relationship, blood or otherwise. In restricted sense, the word 'family' may be used interchangeably with household." (Citations omitted.)

living" [6] and who, under the terms of their lease, may be evicted by their lessor without affecting the tenancy of the other tenants on the lease, does not fall within any reasonable judicial construction of the words "one family." See *Quogue* v. *Ladd,* 40 A.D.2d 859 (N.Y. 1972) (group of eleven unrelated young adults to whom defendants rented one-family residence for the summer not a "family" within meaning of zoning ordinance); *Henrietta* v. *Fairchild,* 53 Misc. 2d 862 (N.Y. Sup. Ct. 1967) (use of premises by owner and from three to seven unrelated persons, except for one brother, under economic arrangement whereby each contributed toward upkeep and maintenance of the property, interior furnishing of the dwelling, food and entertainment of the group, held not to constitute use by a "single family"). We conclude that § 30-5(a) of the zoning ordinance is not unconstitutionally vague as applied to these defendants.

Similarly, the first and second floors of the defendants' building, which each contain a kitchen, bathroom, bedrooms, and a common room, do not fit within the commonly understood meaning of a one-family dwelling. See State Building Code, 780 Code Mass. Regs. § 201.3, at 53 (1980), defining a one-family dwelling as "[a] building containing one (1) dwelling unit with not more than three (3) lodgers or boarders," and a dwelling unit as "[a] single unit providing complete, independent living facilities for one (1) or more persons including permanent provisions for living, sleeping, eating, cooking, and sanitation." See also *Lynn* v. *Olanoff,* 314 Mass. 249 (1943); *Martin* v. *Rent Control Bd. of Cambridge,* 19 Mass. App. Ct. 745 (1985); *Williams* v. *Adami,* 70 Misc. 2d 702 (N.Y. Sup. Ct. 1972). Moreover, Leon Jaffe's representation to a city building inspector that a second stove would not be installed supports an inference that both defendants, or at least

---

[6] The defendants assert that the Commonwealth did not prove that the tenants evidenced "a complete lack of communal living." We do not agree. The separate kitchens, the number of mailboxes, and the lease provisions all support the judge's conclusion that there was no evidence of "communal living."

Leon Jaffe,[7] were well aware of the meaning of a one-family dwelling and had installed a second stove without a building permit in deliberate contravention of the city's zoning ordinance.

The defendants also argue that § 30-5(a) violates their due process rights pursuant to art. 10 of the Massachusetts Declaration of Rights because it restricts the benefits of single family zoning districts to persons related by blood, marriage, or adoption. Relying primarily on cases from other jurisdictions (*Santa Barbara* v. *Adamson,* 27 Cal. 3d 123 [1980]; *Delta* v. *Dinolfo,* 419 Mich. 253 [1984]; *State* v. *Baker,* 81 N.J. 99 [1979]; and *McMinn* v. *Oyster Bay,* 105 A.D.2d 46 [1984], aff'd, 66 N.Y.2d 544 [1985]), the defendants urge this court to adopt the notion of a "single housekeeping unit" rather than that of a "biologically related family."[8] They cite *McMinn* v. *Oyster Bay, supra* at 57-58, for the proposition that "the viability of single-family zoning restrictions no longer depends on biological or legal relationships but on the single housekeeping unit which reflects a certain level of stability . . . . When a group

---

[7] The defendant Shirley Jaffe made no separate argument concerning the evidence of her knowledge on this issue. That issue, therefore, is deemed waived. An " 'appellate court need not pass upon questions or issues not argued in the brief.' Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975)." *Commonwealth* v. *Cundriff,* 382 Mass. 137, 151 (1980), cert. denied, 451 U.S. 973 (1981).

[8] The defendants also rely upon *Shuman* v. *Aldermen of Newton,* 361 Mass. 758 (1972), and *Martin* v. *Rent Control Bd. of Cambridge,* 19 Mass. App. Ct. 745 (1985), which are readily distinguishable. *Shuman* involved an appeal from a decision by the city's board of aldermen granting a special permit to operate, in a single residence area, a residence for high school students experiencing difficulty with life at home. In contrast, this case does not involve the granting of a special permit. *Martin* involved an appeal by the Cambridge rent control board from a Superior Court judgment determining that certain property was exempt from St. 1976, c. 36, the Cambridge Rent Control Act, as an owner-occupied, three-family house. In reversing the judgment, the *Martin* court emphasized that a building's structural design, rather than its actual occupancy, "is the determinative fact in deciding the structure's classification under a zoning by-law." *Martin* v. *Rent Control Bd. of Cambridge, supra* at 748. We agree. However, in determining whether the defendants used (as opposed to designed) their structure as a dwelling for more than one family, we must of necessity examine the nature of the structure's occupancy.

functions as a single housekeeping unit, it is considered to
bear 'the generic character of a family unit as a relatively
permanent household' . . . and it should be as entitled to
occupy a single-family dwelling as its legally or biologically
related neighbors . . . . The single housekeeping unit that
consists of persons who live and cook together because they
are friends, seek companionship or share the need for affordable
housing, approximates the living arrangements of a traditional
family, and its existence as a normal, stable and permanent
unit makes its use of the dwelling compatible with the residen-
tial neighborhood in which it is located . . . ." (Citations
omitted.)

Assuming, without deciding, that the ordinance should be
interpreted as referring to a "single housekeeping unit," that
definition does not aid the defendants. The stipulated facts,
the separate mailboxes, and the terms of the lease support the
conclusion that the tenants' living arrangement simply did not
achieve the permanency and cohesiveness inherent in the notion
of a single housekeeping unit. See *McMinn* v. *Oyster Bay,
supra.*

Finally, the defendants argue that the evidence is insufficient
to show that they designed, arranged, or constructed their build-
ing as a dwelling for more than one family.[9] We disagree. As
discussed *supra,* there was ample evidence that the defendants'
building constitutes at least a two-family dwelling under both
the State Building Code, 780 Code Mass. Regs. § 201.3, and
applicable decisional law, *Lynn* v. *Olanoff, supra; Martin* v.
*Rent Control Bd. of Cambridge, supra.*

*Judgments affirmed.*

---

[9] The defendants suggest that there may be a myriad of reasons why there
would be a second kitchen in a single-family home. They contend that
because there may be no relationship between the second kitchen and the
definition of "family," the second kitchen should not be viewed as decisive.
See *Baskin* v. *Zoning Bd. of Appeals of Ramaro,* 40 N.Y.2d 942 (1976)
(family needed second kitchen for religious dietary reasons). However, in
this case, the judge treated the second kitchen as one factor but not the
only factor in finding the defendants guilty. Further, the record does not
disclose any reason for a second kitchen in this case, and no application
for the necessary permission was made to the city of Newton. See *supra*
at 52 & note 4.