Merrick, P. J.
This is a Dist./Mun. Cts. RAD.A, Rule 8A appeal by the plaintiff-landlord of a judgment for the defendant-tenant on both the plaintiff’s summary process complaint for unpaid rent and possession, and the defendant’s counterclaim.
The expedited appeal indicates that plaintiff Neil Singer (“the landlord”) owns a three family dwelling at 157 Perkins St. in Somerville in an area zoned for such dwellings, and does not have the required license, certificate of occupancy or special permit to operate a rooming house. Each of the three apartments contains four bedrooms, a single common kitchen and a single common bathroom. Other than *8 the kitchen and bathroom and a small entry hall, there are no living rooms or other common areas in the apartments.
In March, 1995, defendant Joseph Dennis DeMartino (“the tenant”) answered a rental ad for a single room, and entered into a written contract with the landlord entitled “Room Rental Agreement: Tenancy at Will.” The document includes two pages of single space printing on the landlord’s letterhead. The agreement provides for a weekly rent of $110.00 for room number 3-C, and states in paragraph 1.2:
For the rental fee indicated above, landlord agrees to rent the private furnished room in the premises whose room number is indicated above to the tenant, including the right to use the kitchen and bathroom of the apartment containing tenant’s room. ...
Three other individuals, unrelated and previously unknown to the tenant, rent the other rooms in the apartment under separate, similar arrangements with the landlord. The same is apparently true of the occupants of the other apartments in the building.
On December 20, 1989, a Zoning Inspector for the City of Somerville issued a written notice to the landlord that the City’s Inspectional Services Department had been informed that the landlord’s building contained “possibly more dwelling units ... than are allowed by the Building Code or by the Somerville Zoning Ordinance.” For whatever reason, that inspector sent a second letter to the landlord on January 16,1990 indicating that he found “no evidence of any violations.” In 1991, however, another zoning officer advised the landlord that there was evidence of fourteen (14) “SRO" (single room occupancies) in the building, that a special permit was required for the operation of a “boarding house/single room occupancy” and that a single room occupancy was limited to five persons. The landlord replied with a copy of the January 16, 1990 letter. On February 27, 1997, the Somerville Inspectional Services Department issued a “Notice of Violation” which ordered the landlord to “ [c] ease and desist use of the building as a boarding house by renting single room occupancy units, forthwith, and restore the building to its legal use as a three family dwelling.”
The tenant ceased paying rent in February, 1997, and the landlord commenced this summary process action on March 17,1997. The tenant filed a jury claim and a counterclaim seeking a one hundred (100%) percent abatement of all rent previously paid on the ground that the building was an illegal boarding house, and triple damages pursuant to G.L.c. 93A. The landlord moved to dismiss the counterclaim. At the motion hearing, the liability issue was submitted to the judge in the jury session on a “case stated.”[1] The judge ruled that the landlord was operating an illegal boarding house and entered a finding for the tenant.
*9 The landlord filed several additional motions, including a motion for an eviden-tiary hearing on damages. The court denied those motions and, without taking any evidence, assessed actual damages in the amount of $11,243.00. The court then trebled those damages upon a finding of the landlord’s willful and knowing violation of G.L.C. 93A, and also assessed attorney’s fees.[2] The landlord subsequently filed this appeal.
1. The landlord argues initially that the tenant’s claim of an illegal boarding house is not one that could be properly raised under G.L.c. 239, §8A, which permits defenses and counterclaims in summary process actions based upon breach of warranty, retaliation and “a violation of any other law.” Section 8A states:
Whenever any counterclaim or claim of defense under this section is based on any allegation concerning the condition of the premises or the services or equipment provided therein, the tenant or occupant shall not be entitled to relief under this section unless: (1) the owner ... knew of such conditions before the tenant or occupant was in arrears in his rent; ... and (4) the plaintiff does not show that the conditions complained of cannot be remedied without the premises being vacated;[3] ...
The landlord argues that the tenant is not entitled to relief pursuant to this section because he was already in arrears in his rent when the Notice of Violation was issued by Somerville on February 27,1997. The record is clear, however, that at the time he first rented the single room to the tenant, the landlord was in possession of all of the facts upon which the allegation of an illegal boarding house is based. It is the time of the landlord’s knowledge that governs. The official notice of violation is only one method of proving knowledge. McKenna v. Begin, 3 Mass. App. Ct. 168, 171-172 (1975). There was no lack of notice to the landlord which would bar the tenant’s counterclaim under §8A.
2. As to the substance of his appeal, the landlord continues to insist that he is not operating a boarding house. The relevant definitions of the Somerville Zoning Ordinance are as follows:
Boarding House. A residential use that provides four or more rental boarding rooms for four or more unrelated individuals, for occupancy longer than a 14 day period, and which is duly licensed by the Board of Aldermen.
Family. An individual, or two or more persons related by blood, marriage or adoption, living together as a single housekeeping unit and occupying one dwelling unit; or a group or pair of individuals, not so related, but living together as a single housekeeping unit. For purposes of controlling residential density, not more than four unrelated individuals shall constitute a family, (emphasis added)
Dwelling Unit. A single unit providing complete, independent living facilities containing one (1) or more rooms arranged for the use of one (1) or more individuals living together as a single housekeeping unit, with cooking, living, sanitary and sleeping facilities, (emphasis added)
The landlord argues that he is not operating a boarding house because each apartment is a “dwelling unit” which houses no more than four unrelated individuals “living together as a single housekeeping unit." The judge correctly described this *10 argument as "disingenuous.”
Even if we accept the landlord’s sophistry in treating each apartment separately, the apartments are not designed to house a “single housekeeping unit.” What would have been the living room has been eliminated to create one or more bedrooms. Except for the entryway, kitchen and bathroom, the apartment consists entirely of bedrooms. Such a layout is plainly adapted for single room occupancy. Selvetti v. Building Inspector of Revere, 353 Mass. 645, 646 (1968). Moreover, it is not just the design of physical space that determines its status for zoning purposes, but also the use to which it is put. Id. at 646-647. The real question is whether the occupants of the apartment are a “single housekeeping unit.”
When a group functions as a single housekeeping unit, it is considered to bear the generic character of a family unit as a relatively permanent household ... and it should be as entitled to occupy a single-family dwelling as its legally or biologically related neighbors. ... The single housekeeping unit that consists of persons who live and cook together because they are friends, seek companionship or share the need for affordable housing, approximates the living arrangements of a traditional family, and its existence as a normal, stable and permanent unit makes its use of the dwelling compatible with the residential neighborhood in which it is located.
Commonwealth v. Jaffe, 398 Mass. 50, 56-57 (1986).
The tenant and the other occupants of apartment 3C are not a “single housekeeping unit.” Their relationship is not based upon friendship or any other common interest. Indeed, the association is not even created by the occupants themselves. Each of them contracts separately with the landlord. Each separately pays weekly rent to the landlord. They have no say in the selection of the tenants who will be their fellow apartment occupants. It is significant that each of the occupants of the apartment may be separately evicted by the landlord without affecting the rights or obligations of the other occupants. Commonwealth v. Jaffe, supra at 54-55. The only connection between them is that they have been separately installed by the landlord into the same four bedroom suite.
The Somerville ordinances would not prohibit renting the apartment jointly to the defendant and three others, “each of whom would be acquiring a right, as against the owner, to possess the entire premises for the entire term of the tenancy.” Hall v. Zoning Board of Appeals of Edgartown, 28 Mass. App. Ct. 249, 255-256 (1990). The tenant herein did not, however, have possession of the apartment. He had possession of only one bedroom with “the right to use” the kitchen and bathroom. The landlord was restricted by the Rental Agreement from entering the tenant’s room except under specified circumstances. There is no limitation on his right to enter the apartment.
The judge correctly ruled that the tenant was occupying an illegal boarding house.
3. A question remains as to whether the landlord is entitled to recover anything for the tenant’s occupancy or whether, as the judge implicitly ruled, the landlord must return all rents paid. Where the illegal element to a contract consists of the unlicensed providing of goods and services, which requires a license, the trial court must determine whether recovery may be had upon the contract in the light of all relevant circumstances. These include:
the nature of the subject matter of the contract... the extent of the illegal behavior ... [whether] that behavior [was] a material or only an incidental part of the performance of the contract (were ‘the characteristics which gave the plaintiff’s act its value to the defendant... the same as *11 those which made it a violation ... of law’);... the strength of the public policy underlying the prohibition; how far ... effectuation of the policy [would] be defeated by denial of an added sanction; how serious or deserved would be the forfeiture suffered by the plaintiff, how gross or undeserved the defendant’s windfall.
Town Planning & Engineering Assoc. v. Amesbury Specialty Co., 369 Mass. 737, 745-746 (1976) ,[4] “Our cases warn against the sentimental fallacy of piling on sanctions unthinkingly once an illegality is found.” Id. at 746. The landlord has already been threatened by the City of Somerville with a fine of up to $500.00 per day. There is no need to make the tenant a gift of free housing. “In a case of illegality, serious but not so serious as to defeat the action, the plaintiff, though permitted a judgment, might be made to suffer a sanction through the reduction of his recovery to a quantum meruit less than the contract price.” Id. at 747. In this case, that sanction could, e.g., be the defendant’s twenty-five (25%) percent share of the difference between the amount charged for the apartment, $1,892.00 (4 rooms at $110.00 per week x 4.3), and the value of the apartment rented to a “single housekeeping unit,” which the tenant claims is $850.00 per month. Assuming these figures are established by testimony or other evidence, this calculation is not unlike the formula for assessment of damages for a breach of the warranty of habitability. McKenna v. Begin, 5 Mass. App. Ct. 304, 310-311 (1977).
4. Damages will have to be re-assessed. The docket indicates that the tenant filed a jury claim under the Middlesex County “one-trial” experiment statute. St. 1996, c. 358. “Of course, the right to a jury trial on damages remains unaffected by adjudication of the liability issue.” J.W. SMITH & H.B ZOBEL, RULES PRACTICE §56.9 at 362-363 (1977). A jury trial will, of course, not be available if the parties have already waived it (no waiver appears in the record), or if the tenant limits his counterclaim to G.L.c. 93A pursuant to which the judge awarded damages here. Nei v. Burley, 388 Mass. 307, 315 (1983). In the event that the damages assessment is jury-waived, it should be heard by the same judge.
In our discretion, we decline to award appellate counsel fees. Patry v. Liberty Mobilehome Sales, Inc., 394 Mass. 270, 272 (1985).
The trial court’s judgment for the tenant is vacated, and the case is returned to the trial court for an assessment of damages.
So ordered.

 Actions are commonly submitted, in lieu of evidence adduced at trial, on a case stated or agreement as to all material facts upon which the rights of the parties are to be determined, see Rogers v. Attorney General, 347 Mass. 126, 130 (1964); Scaccia v. Boston Elev. Ry., 308 Mass. 310, 312-313 (1941); on statements of agreed facts or evidence, see Mollahan v. McGrath, 357 Mass. 229, 232 (1970); Lapp Insulator Co. v. Boston & Maine RR, 330 Mass. 205, 206 (1953); or on stipulations or undisputed statements of counsel. Zottu v. Electronic Heating Corp., 334 Mass. 442, 446 (1956); Harper v. Harper, 329 Mass. 85, 88 (1952). Although the landlord has argued on this appeal that the matter was not submitted on a case stated, he did not so state in his Rule 8A Expedited Appeal. It is the responsibility of the appellant under Rule 8A to assemble a complete and accurate record upon which the issues presented on appeal may be reviewed. Rossi v. Oceanview Country Club, 1997 Mass. App. Div. 197, 197. Nor did he elect to proceed on appeal on the basis of a transcript of the hearing pursuant to Rule 8C to substantiate his claim that no case stated was presented.

 The judge made no order as to possession because the tenant had already vacated the premises.

 The statute excepts temporary removal for deleading.

 On the same subject, see also Kenyon v. Andrews, 347 Mass. 769 (1964) (unlicenced insurance broker in partnership with licensed broker); Joffe v. Wilson, 381 Mass. 47, 55-56 (1980) (public accountant with agreement violating intermediation rule); Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 126 n.12 (1992) (unlicenced real estate broker in sale of real estate forming part of sale of business); Business Brokers Int’l Corp. v. Roderick, 24 Mass. App. Ct. 957, 957-958 (1987) (corporate real estate broker’s employment of unlicenced broker). Compare Hastings Assoc., Inc. v. Local 369 Bldg. Fund, Inc., 42 Mass. App. Ct. 162, 176-177 (1997) (agreement to operate business predicated on illegal transfer of lessor’s liquor license).